Case 83.—ACTION BY WILSON HELM AGAINST THE LOUIS-
VILLE & NASHVILLE RY. CO. FOR DAMAGES FOR PER-
SONAL INJURIES.—December 16.

## Louisville & Nashville Ry. Co. v. Helm.

| 121 | 645 |
| 130 | 404 |

| 121 | 645 |
| 132 | 553 |

Appeal from Boyle Circuit Court.

W. C. BELL Circuit Judge.

Judgment for plaintiff.   Defendant appeals.   Affirmed.

1. Master and Servant—Injury to Section Hand—Negligence of
Section Boss—A section hand was injured in a collision be-
tween a hand car and a freight train. The section boss took
the hands out on the time of the freight train, knowing
with reasonable certainty that the train would be met.
Held—To authorize a finding that the hand's injury was
due to the gross negligence of the section boss, authorizing
a recovery from the railroad company, though he ordered
the men to jump when the train was about to strike the
car.

2. Same—Contributory Negligence—A section hand was injured
in a collision between a hand car and a freight train. Said
hand was working the lever on the car with his back to the
approaching train, and did not know of its presence until
it was in the act of colliding with the car. The section
boss took the section hands out on the car. Held—That the
section hand was not guilty of contributory negligence, pre-
cluding a recovery.

3. Same—Duty of Section Boss in Caring for Section Men—It is
the duty of the section boss not to go on the track with
hand cars and section hands in the face of the danger of
meeting a train at a place where it can not be seen approach-
ing until about to strike the cars, or if he does so, he must
stop and remove the cars, or send a flagman ahead before
entering such place.

4. Appeal—Verdict on Conflicting Evidence—Conclusiveness—A
verdict on conflicting evidence, supported by some evidence,
is conclusive on appeal.

5. Courts—Jurisdiction—Issue of Fact—Question for Jury—Where
a plea to the jurisdiction of the court depends on a question
of the residence of one of the parties, and the evidence is
conflicting, the question is properly left to the jury.

6. Release—Repudiation—Tender of Amount Received—In an ac-
tion against a railway company for injuries to an employe, the
employe repudiated a settlement on the ground of fraud, and
showed that he had tendered the amount received under
the settlement to an agent in charge of the company's sta-
tion and office at a certain city, which was the principal
office in the county in which the employe resided and the one
nearest to the county seat. No superior officer of the com-
pany resided in the county. The agent received for the
company all moneys paid it for transportation of freight
and passengers to and from the city, and no proof was made
that it had any other agent in the county empowered to re-
ceive money due it. Held—That the agent was one to whom
the employe might make the tender.

7. Same—Amount of Tender—A tender by an employe, who re-
pudiates a settlement for injuries because the same was pro-
cured by the employer's fraud, is sufficient in amount when
the amount received under the settlement is tendered, and
interest from the time the same was received until the tender
is made need not be included.

8. Same—An employer took his injured employe to a hospital.
The employe did not ask of the employer the board and
nursing furnished him at the hospital, was not consulted
about it, and was powerless to prevent it. The employe set-
tled for his injuries and received a sum thereunder. Held—
That the employe, on repudiating the settlement, was not
required to tender to the employer the amount expended by
it on his account during his stay at the hospital.

9. Same—Consideration for Release—An employe released his
claim for injuries by executing an instrument reciting he had
received a specified sum in settlement of his claim on account
of the injuries and signed a receipt acknowledging the pay-

ment thereof. Held—That the consideration for the settlement did not include expenses incurred by the employer in maintaining the employe at a hospital.

10. Same—Consideration—Evidence—Where, in an action for injuries received by an employe, the employe repudiated a release of his claim in consideration of his receiving a specified sum, and the employer did not ask that it should be reformed, so as to include as a consideration for the release expenses incurred by the employer in maintaining the employe at a hospital, the court erred in permitting the employer to give in evidence the cost to it for nursing the employe, and in charging the jury that they should consider the same as entering into the contract between the parties.

11. Appeal—Harmless Error—Errors beneficial to the defeated party and prejudicial to the successful party do not authorize a reversal on the appeal of the defeated party.

12. Release—Fraud—Evidence—Sufficiency—On the issue whether a release executed by an employe, whereby he released all claims for injuries, was procured by the fraud of the employer, examined, and Held—To support a finding that the release was fraudulently procured, so that it did not prevent the employe from maintaining an action for the injury.

13. New Trial—Verdict Against Weight of Evidence—That a verdict is not in accord with the testimony of a majority of the witnesses furnishes no reason for the trial court to set it aside.

14. Release—Fraud—Ratification—An employe executed a release of his claim for injuries, and spent less than $50 of the $400 received in settlement. As soon as he discovered the amount that had been paid him, he took legal advice as to his rights, and on instituting suit he tendered to the employer $400. Held—That the expenditure of less than $50 did not amount to a ratification of the setlement, so as to prevent the repudiation thereof on the ground that the same was obtained by fraud.

15. Same—Cancellation—Return of Consideration—Tender—Sufficiency—An employe, repudiating a release of his claim for injuries on the ground that the same was procured by fraud, is not bound to offer to repay the employer the identical money paid for the release.

16. Damages—Personal Injury—Excessive Damages—A verdict of $5,000 for the loss of a leg and the physical and mental suffering attending its fracture and amputation is not excessive.

BENJAMIN D. WARFIELD for appellant.

C. R. McDOWELL of counsel.

Louisville & Nashville Ry. Co. v. Helm.

## POINTS AND AUTHORITIES DISCUSSED.

1. The Boyle Circuit Court had no jurisdiction of appellant. (Civil Code, secs. 73, 92, sub-sec. 1; Harper, &c. v. N. N. & M. V. Co., 90 Ky., 359-363; Morris v. Gilmer, 129 U. S., 315, and cases there cited; Jacobs, Adm'r v. L. & N. R. Co., 10 Bush, p. 269.)

2. There being no good plea of tender, the judgment should have been for appellant, though there was a verdict against it. (Civil Code, sec. 386; Gould's Plead., sec. 46; Dewey v. Humphrey, 5 Pick., 187; Evans v. Stone, 80 Ky., 78; L. & N. R. Co. v. Mayfield, 18 Ky. Law Rep., 224; Ib v. Schweitzer's Adm'r, 14 Ib., 855; Gore v. I. C. R. Co., 17 Ib., 799; I. C. R. Co. v. Nall, 21 Ib., 281; Brooks v. L. & N. R. Co., 24 Ib., 1318.)

3. The compromise settlement was freely, fairly and understandingly made with appellee, and there is no ground for disaffirmance. (L. & N. R. Co. v. Carter, 23 Ky. Law Rep., 2017; Barker v. N. P. Ry. Co., 65 Fed., 461; E. T., V. & G. R. Co. v. Hayes, 83 Ga., 558, 10 S. E., 350; Huffaker v. Jones, 13 Ky. Law Rep., 432; Hart v. Gould, 62 Mich., 262; Wells v. Neff, 14 Ore., 66, 12 Pac., 88; Vandervelden v. Ry. Co., 61 Fed., 54; C. & N. W. Ry. Co. v. Wilcox, 116 Fed., 913.)

4. Even if appellee had the right to disaffirm the settlement, he defeated this right:

(a.) Because the pretended tender was not made to an authorized agent of appellant.

(b.) Because it was not for a proper amount—interest and expenses, in addition to the $400 paid in settlement, not being included in the tender. (28 A. & E. Ency. of Law, p. 19e, and cases there cited; L. & N. R. Co. v. McElroy, 100 Ky., 153; Home Benefit Society v. Muehl, 109 Ky., 479; Cobb v. Hatfield, 46 N. Y., 533; Evans v. Gale, 17 N. H., 573; Slack v. Price, 1 Bibb., 274; Jarboe v. McAtee, 7 B. M., 279; Halpin v. Phoenix Ins. Co., 118 N. Y., 165; Wright v. Robinson, 84 Hun., 172; Franklin v. Ayre, 22 Fla., 654; Pell v. Chandos, 27 S. W., 48.)

(c.) Because the tender was not kept good. (Bissell v. Heyward, 96 U. S., 587, and cases there cited; State of Illinois v. I. C. R. Co., 33 Fed., 730; Woodland Cemetery Co. v. Ellison, 25 Ky. Law Rep., 2069.)

(d.) The tender came too late. (Strong v. Strong, 102 N. Y., 69; Gould v. Bank, 86 N. Y., 75; 1 A. & E. Ency. of Law [2d Ed.], p. 430.)

(e.) Because the money tendered was not appellee's money. (Boyce & Shrieve v. Prichett's Heirs, 6 Dana, 231.)

(f.) Because the disaffirmance was not attempted in a county in which the contract could have been enforced. (Civil Code, sec. 72.)

5. Appellee ratified the settlement by the use he made of the money he received, and by his laches in attempting to disaffirm the settlement. (Taylor v. Patrick, 1 Bibb., 170; Mo. Pac. R. Co. v. Brazzil, 10 S. W., 406; Gibson v. Western, &c., R. Co., 44 Am. St. Rep., 595, 164 Pa. St., 142.)

6. The evidence does not show that appellee ever had a cause of action against appellant.

7. The instructions are vitally erroneous in many particulars. (1 Shearman & Redfield on Negligence, sec. 89; Cain's Adm'r v. O. V. Tel. Co., 20 Ky. Law Rep., 855.)

8. The burden was on appellee to establish, by the weight of evidence, that he was not of contractual capacity when he made the setlement. (Addyston Pipe & Steel Co. v. Copple, 94 Ky., 292; Cunningham v. Belknap & Co., 22 Ky. Law Rep., 1580.) This he has not done. His own testimony is wholly uncorroborated, shows he was testifying falsely or mistakenly, and must, therefore, be disregarded. (Hurt v. L. & N. R. Co., 25 Ky. Law Rep., 758, 759.)

ROBERT HARDING for appellee.

E. V. PURYEAR, RAWLINGS & VORIS and GREENE & VAN WINKKLE of counsel.

The company's liability is so palpably clear, and his cause of action is so well shown from the uncontradicted testimony, that it is not even a debatable question.

1. It is contended that the Boyle Circuit Court had no jurisdiction, because it is claimed that Helm did not reside in Boyle county when he filed his petition herein, on the 28th of August, 1902. This was necessarily a question of fact, which was left to the jury to determine under the instructions of the court.

2. It is contended also that the alleged settlement with Helm at $400 "was fully, fairly and understandingly made with appellee, and there is no evidence authorizing a disaffirmance of it. In its answer, the company relies on a settlement alleged to have been made June 4, 1902, and should have been confined to that date in its proof.

Helm denies this settlement, and pleads and proves that at some time, when he did not know it, his signature or mark was obtained to a paper which purported to be a settlement of his claim. He alleges and proves that he ascertained this after he left the hospital.

3. Appellant's third contention is, that this action can not be maintained, because before instituting it, the appellee did not tender back to the company the value of the medical attention, or

Louisville & Nashville Ry. Co. v. Helm.

the value of hospital nursing, medicine and board, or the value of his transportation from Covington to Stanford, or the $400 alleged to have been received by him, under the terms of a contract mutually entered into by him with the company in settlement of his claim for damages for his personal injuries inflicted by the gross negligence of the company.

Upon the issue made by his denials the burden was upon the company to establish these stipulations of the contract to the satisfaction of the jury, to whom the issues of fact are required by law to be submitted.

### AUTHORITIES CITED.

L. & N. Ry. Co. v. McElroy, 100 Ky., 153; Mullen v. Old Colony R. R. Co., 127 Mass., 86; Brown v. Hartford Insurance, 117 Mass., 479; Lumley v. Wabash Ry. Co., American and English Railroad Cases, New Series, vol. 6, 94; Railroad Co. v. Harris, 158 U. S., 326; Railroad Co. v. Digle, 18 Kan., 58; Railroad Co. v. Lewis, 109 Ill., 120; Bigelowe on Fraud, 425; Deischman v. Deischman, 49 Mo., 107; Westlake v. St. Louis, 77 Mo., 47; Duvall v. Mawry, 6 R. I., 479; Smith v. Salmon, 7 Daly, 216; Butler v. Redmond and D. R. Co., 88 Ga., 594; Kley v. Healey, 227 N. Y., 555; Shenon v. Pacific Mutual Life Insurance Co., 38 Wis., 507; Kerchur v. New Home Sewing Machine Co., 135 N. Y., 182-507; Knoxville C. G. & L. R. R. Co. v. Acuff, 92 Tenn., 26; Mercer v. King, 13 Ky. Law Rep., 429; Lithgrow Mfg. Co. v. Samuel, 24 Ky. Law Rep., 1590; Evening Post Co. v. Canfield, 23 Ky. Law Rep., 2028; Castle v. Bays, 19 Ky. Law Rep., 345.

OPINION BY JUDGE SETTLE—Affirming.

The appellee, Wilson Helm, while serving the appellant, Louisville & Nashville Railroad Company, as a section hand, was injured in a collision between a hand car upon which he and some of his fellow serva: s were riding, and one of appellant's freight trains. The injuries sustained by appellee were a fracture of one leg and other wounds upon different parts of the body, the fracture of the leg resulting in its amputation. For the injuries thus sustained he instituted this action against appellant in the Boyle Circuit Court, laying his damages at $10,000, and charging in

the petition that his injuries were caused by the gross negligence of appellant in requirirng him to be and remain on the hand car at the time of the collision, in failing to give him timely warning of the approach of the train, and in permitting the hand car to remain on the track and in the way thereof.

At the appearance term of the Boyle Circuit Court appellant filed a special demurrer to the jurisdiction of the court, entered a motion to quash the summons, and also filed a plea in abatement, wherein it was alleged that the Boyle Circuit Court had not jurisdiction of the case, because appellee was injured in Harrison county, and that he was not, when injured, or when the action was instituted, or at any time theretofore, a resident of Boyle county, but is and was a resident of Lincoln county, and, further, that appellant's station agent at Junction City, Boyle county, on whom the summons issued in the case was served, was not the officer or agent of appellant required by law to be served with summons. Appellee filed a reply to the plea in abatement, traversing its averments, and later filed an amended petition, in which it was alleged that he was a citizen and resident of Boyle county at the time of the action. Appellant filed answer to the amended petition, containing a denial of the allegations thereof, and averring that appellee was only a pretended resident of Boyle county at the time of the institution of the action, and that his pretense of being a resident of that county was resorted to for the fraudulent purpose of giving the circuit court of that county jurisdiction of the case. The affirmative matter of the answer to the amended petition was controverted by reply.

Without waiving its objection to jurisdiction, appellant then filed answer, interposing the following

grounds of defense to the action on the merits: (1) A renewal of the former plea in abatement. (2) A traverse of the averments of the petition. (3) That appellee was guilty of contributory negligence, but for which he would not have been injured. (4) That after appellee was injured he compromised and settled with appellant his claim for all damages resulting from his injuries, and released it from all liability by reason thereof, in consideration of $400, which it paid him in cash, and its undertaking to continue to furnish him, as it had done from the time he was injured, necessary hospital board, nursing, medicine and medical attention at the Covington Hospital, in the city of Covington, and, as soon as he was discharged by the physician in control of the hospital, to furnish him transportation from the city of Covington to Stanford, Lincoln county, Ky. (5) That appellant did pursuant to its agreement and settlement with appellee, maintain him at the Covington Hospital from April 24, 1902, until he was discharged, June, 1902, by the physician in control of that institution, pay all bills for his hospital board, nursing, surgical attention, medicine, &c., and, when he was discharged, furnished him transportation from Covington to Stanford, all at a cost to appellant of about $136.40.

Appellee by reply denied all the affirmative matter of the answer, and averred in substance that the alleged compromise and settlement of his claim for damages against appellant was fraudulently brought about and procured by appellant, through its agents and servants, at a time when he was sick from his injuries and mentally unable to understand the transaction, or to contract or be contracted with; that appellant's agents, intending to overreach and defraud him, and knowing that he could not read or write, and

that he did not understand the transaction, fraudulently procured his signature or mark to a writing which purports to be a settlement of his claim for damages against appellant at the inadequate sum of $400; that he was not, at the time the $400 was paid by appellant, mentally capable of receiving it, or of knowing the amount thereof, and that appellant, knowing his inability to do so, had an employe in the hospital to take charge of it, who gave it to him when he left the hospital, and he accepted it, thinking it was $1,500, "and part payment of a proposed payment of plaintiff's claim by the defendant," and when, later, he discovered it was only $400, offered to return it to appellant, and made a tender of it to appellant through its proper agent before instituting this action, but the agent refused to accept it.

There were other pleadings, responsive and by way of amendment, filed by both appellant and appellee; but we deem it unnecessary to call attention to them, as what we have said about those mentioned will sufficiently indicate the issues involved. After the issues were formed, appellant entered a motion to the effect that the lower court hear proof and determine whether or not it had jurisdiction of the case before undertaking a trial on the merits, and also entered a motion to dismiss the action for the want of jurisdiction; but both motions were overruled by the court, as were the demurrer to jurisdiction and the motion to quash summons, to all of which appellant excepted at the time. On the trial the jury returned a verdict in behalf of appellee for $5,456, with a credit of $456, leaving a net sum of $5,000; and for this amount the court entered a judgment in appellee's favor. Appellant, after the return of the verdict and before judgment was entered thereon, moved the court for a judg-

ment non obstante veredicto, which motion was over-ruled.    Thereupon it filed motion and grounds for a new trial, which the court also overruled.

The evidence as to the manner in which appellee received his injuries manifests the following facts: That appellee and other servants of appellant, in obedience to the orders of its section boss, got upon two of its hand cars, to be carried, as was the custom, to their place of work, which was a point north of Boyd Station.    There were twenty of the section hands, and two hand cars were required to carry all of them to their work.    In proceeding to the place of work one of the hand cars followed immediately behind the other.    The section boss was on the front and appellee on the rear car, engaged in working one of the levers by which it was propelled; his back being toward the front car.    After going a short distance and reaching the middle of a deep cut, a freight train coming around a curve from the opposite direction to that in which the hand cars were going, ran into and collided with the hand cars.    The section hands, including appellee, jumped to the ground in trying to escape; but as the latter reached the ground one of the hand cars was knocked by the freight train against him with such force as to break his right leg and otherwise injure him.    As, according to the evidence, the section boss took the hands out on the time of the freight train with which they collided, knowing with reasonable certainty that they would be met by the train, the jury were authorized to find that he was guilty of gross negligence which caused appellee's injuries.    It is true there was some testimony to the effect that he ordered the men to jump for their lives when he saw the freight train; but, as the train could not be seen until it was about to strike the hand cars,

the warning came too late for appellee's safety. He was then working the lever with his back to the train, and did not hear or know of its presence until it was in the act of colliding with the hand car. Consequently there was no contributory negligence on his part in the matter of receiving his injuries. It was the duty of the section boss not to go on the track with the hand cars and section hands in the face of such a danger, or, if he did so, to stop and remove the cars from the track or send a flagman ahead before entering the cut, from which the approaching train could not be seen.

Appellant's main contention is that the lower court should have sustained its demurrer to jurisdiction or its plea in abatement. The question of jurisdiction depended upon whether appellee was a bona fide resident of Boyle county at the time of the institution of of the action. The testimony of appellant conduced to prove that he was not. Upon the other hand, appellee testified positively that he was, in which he was in some sort corroborated by other witnesses. So that, while there was a sharp conflict in the evidence on this point, the question was one of fact, which was determined in appellee's favor, and, being supported by some evidence, we can not say that the finding was unauthorized. Nor do we think the leaving of this issue of fact to the jury was prejudicial error. While a plea to jurisdiction is most generally determined by the court, where it depends, as in this case, upon a question of residence, we think it may be left by the court to the decision of a jury, under proper instructions, like any other issue of fact. Therefore the court did not err in overruling the demurrer to jurisdiction, or in refusing to sustain the plea in abatement.

It is also insisted for appellant that the tender made by appellee before suit was invalid, first, because

it was not made to an agent of appellant authorized to accept it; second, because the sum tendered was not sufficient in amount. As to the first proposition it is enough to say that the person to whom the tender was made was at the time an agent of appellant and in charge of its railroad station and office at Junction City, which is its principal station and office in Boyle county, and the one nearest Danville, the county seat. It is admitted that no executive or superior officer of appellant resides in or has an office in Boyle county. We think it safe, therefore, to assume that the agent in charge of appellant's principal railroad office and station in Boyle county is its chief officer or agent in that county, and it is not denied that he is the agent of appellant upon whom summonses that issue from the Boyle Circuit Court in actions against it are accustomed to be served. It was also in proof that this agent receives for appellant all moneys that are paid it for the transportation of freight and passengers to and from Junction City over its railroad, and no proof was made for appellant that it had any other agent in Boyle county to receive money due it, or to whom its rules of business required money to be paid. In view of the foregoing facts, we are of opinion that the Junction City agent of appellant was the one to whom appellee had a right to make the tender relied on.

This being determined, the next inquiry is, was the sum tendered sufficient in amount. The amount paid appellee by appellant in the alleged compromise and settlement of his claim of damages was $400, and this was the amount he tendered to appellant's agent before the institution of the action. It is, however, claimed by appellant that, in order to make the tender a valid one, appellee should have included in the

amount tendered interest   on the $400   for the time in-
tervening between the   date of the   alleged   settlement
and the date of the tender, and also the expenses incur-
red by appellant   on his   account for   hospital   board,
nursing, medicines, surgeons' bills, etc.   We are unable
to accept this view of the matter.   If,   as   claimed by
appellee, the compromise and settlement of his claim
against appellant   was   fraudulently   effected   by its
agent at a time when he, by reason of his wounds, was
mentally incapable of understanding the transaction,
the payment to him of the $400 was but a part of the
means used to accomplish the fraud; and, this being
true, appellant can not insist upon compensation by
way of interest for the time it was deprived of the
use of the $400, and, if permitted to do so, would
profit by its own fraud.   The law will not allow a pre-
mium upon fraud, or reward wrongdoing.   Besides,
if appellee's contention that he was defrauded in the
compromise be sound, while he was enjoying the use
of the $400, appellant was retaining the much larger
sum of which appellee was deprived by the fraudul-
lent compromise.

   Obviously there was no reason why appellee should
have tendered appellant the amount expended by it
on his account during his stay at the hospital, for he
was taken there and provided for because he was a
servant of appellant and was injured while in its ser-
vice.   He did not ask of appellant the board, nursing
and care furnished him, was not consulted about it,
and was powerless to prevent it.   Unless we assume
that appellant's only purpose in thus caring for him
was to procure the compromise which it claims fol-
lowed his removal to the hospital, we must conclude
that what it did for appellee was done without expec-
tation of reward; and, without regard to the alleged

compromise, we further conclude that, if appellee had not asserted a claim for damages on account of his injuries, appellant would have made no claim against him for the expense incurred on his account. The tender made by appellee before suit was renewed during the trial, and in the verdict returned by the jury appellant was allowed a credit for the $400, constituting the amount originally tendered, with interest thereon, amounting to the further sum of $56.

Appellee's removal to the Covington Hospital occurred April 24, 1902, the same day his injuries were received. About two weeks later his leg was amputated, and the writing evidencing the alleged compromise and settlement of his claim for damages bears date June 3, 1902. The writing is in words and figures as follows:

"Louisville and Nashville Railroad Co., to William Hellem (Col.) Address: Covington, Kentucky. 190-- June 3, 1902. Received of the Louisville & Nashville Railroad Company four hundred dollars ($400) in full compromise, settlement and adjustment of all claims and demands of every character whatsoever which I have against the said company, its officers, agents and employes, on account of the injury to my person and loss and damage to property in collision between a freight train of said company and a hand car near Boyd Station, Harrison county, Kentucky, on the 24th day of April, 1902, and every other account whatsoever.
his
"WILLIAM x HELLEM."
mark

"Witnesses:
"HARRY F. DONNELLY,
"JOHN J. FISHER,
"J. J. DONAHUE."

"Extensions and additions verified in office of auditor of disbursement by A. E. Riley.

"Correct. Approved: J. J. Donahue. (L. A.)

"Approve for adjustment: Chas. Hayden, Comptroller.

"Audited: H. W. Bruce, General Counsel. B. D. Warfield, District Attorney, Registered Law Dept., Louisville. R. E. Lawell, Auditor of Disbursements.

"Received four hundred 00-100 dollars.

his

"WILLIAM x HELLEM.   Date: 190—.

mark

"Witnesses:

"HARRY F. DONNELLY,

"JOHN J. FISHER,

"J. J. DONAHUE."

It will be observed that the writing supra does not express a part of the consideration alleged in appellant's answer as a feature of the contract between the parties, viz., that, in addition to the $400 paid appellee, appellant was to pay his board, surgical bills, and for nursing furnished him during his stay in the hospital, and to furnish him, upon his discharge from the hospital, transportation from Covington to Stanford. Nor does the answer allege a mistake in the writing whereby this important feature of the alleged contract was omitted therefrom. This being true, the lower court should not have allowed appellant to introduce evidence as to the value to appellee, or cost to it, of the board, nursing, surgical bills, transportation, etc., set forth in its answer. Nor should the jury have been instructed to consider, on any aspect of the case, these items as entering into the contract between the parties, if there was a contract made between them. But, as these errors of the court were beneficial to appellant and prejudicial to appellee, they will not authorize a reversal.

The only consideration expressed in the writing is the $400, payment of which is acknowledged therein. The contention of appellee is that his signature to the writing in question was procured by fraud on the part of appellant's agents, that he can neither read or write or count money, and that at the time of the alleged compromise of his claim and the execution of the writing he was, by reason of his wounds and illness, mentally incapable of making a contract, or of understanding the transaction. His contention was supported by no witness other than himself, but his testimony was positive and to the effect that he made no such settlement as claimed by appellant. He admitted that appellant's agent, Donahue, beginning on the day after appellee reached the hospital, repeatedly urged him to settle, and offered him $300, and then $400, which he refused; that Donahue then asked "what would suit him," to which appellee replied he would settle for "1,500, a cork leg, and a life job;" and Donahue then said to him, "Have that leg taken off, and when I come back I will make it all right, and you will get better." According to the testimony of appellee, no further effort was made by Donahue to settle with him, and when the paper relied on by appellant as evidencing the settlement was signed by him, by making his mark, he did not know anything that was going on around him. He further testifies that when the $400 was handed him, upon his leaving the hospital, by an employe thereof, who seems to have had charge of it, he took it, thinking it was the $1,500, or a part thereof, that he had offered to accept of Donahue, and that he did not then count the money, nor could he have done so. Upon the other hand, five witnesses, besides Donahue, introduced by appellant, testified that at the time the paper was executed the $400 was

paid to and accepted by appellee, and then taken for safe-keeping by a nurse of the hospital; that appellee then knew what was being done; that the writing to which he made his mark was read in his hearing and explained to him; and that he, without apparent reluctance, accepted the terms of the settlement as therein expressed.

The jury, as shown by their verdict, accepted appellee's testimony, rather than that of appellant's witnesses, and in doing so, no doubt, took into consideration the circumstances surrounding the parties and the transactions between them. The one party being an ignorant and probably unsuspecting negro, confined to his bed with a wounded leg, having neither relation, friend, or counsel near to advise him of his rights or caution him against imposition; the other represented by a shrewd and zealous agent, ready to do what he could to advance the interests of his employer. This inequality of the parties, the gross inadequacy of the sum paid in settlement, the helplessness of appellee, his inability to resist importunity, and the persistency and haste with which appellant's agent forced the settlement upon him, were all circumstances that doubtless had great weight with the jury. At any rate, they were the triers of the issues of fact submitted to them by the court's instructions, and the fact that their verdict may not be in accord with the testimony of a majority of the witnesses furnished to the trial court no reason for setting it aside. It can not properly be claimed that mere numerical superiority of witnesses on one side constitutes preponderance of proof. Nor can the verdict be set aside as not being sustained by the evidence.

It is argued for appellant that appellee, by expending some of the money received by him in the alleged

settlement of June 3, 1902, ratified that settlement and was thereby estopped to assail it upon the ground of fraud or otherwise. The cases of L. & N. R. R. Co. v. McElroy, 100 Ky., 153, 18 Ky. Law Rep., 730, 37 S. W., 844, and L. & N. R. R. Co. v. Carter, 66 S. W., 508, 23 Ky. Law Rep., 2017 are cited in support of this contention; but in our opinion neither of them sustains it. In L. & N. R. R. Co. v. McElroy, supra, McElroy, a section hand in the employ of the railroad company, had his ankle crushed by an engine. He accepted of the company $700 in settlement of his claims for damages on account of his injuries, but thereafter brought suit against it for a much larger sum. The company pleaded the compromise and settlement of McElroy's claim for damages and that he had not tendered or offered to pay back the $700 which he had received. By reply McElroy admitted that no tender was made, but assailed the compromise and settlement upon the ground that it was procured by the fraud of the company's agents. He recovered in the lower court, but the judgment was reversed on appeal; this court holding that he could not maintain the action because of his failure to tender back to the railroad company before suit the $700 he had received from it in settlement of his claim. It is true that the fact is mentioned in the opinion that McElroy, after receiving the $700 spent it, and that there was no claim on his part that he was not in his usual mental condition when this was done. The court, however, refused to rest the reversal on that ground, but based it upon the sole ground of the failure of tender. In the case of L. & N. R. R. Co. v. Carter, supra, the plaintiff, Carter, a passenger, was injured by the negligence of the railroad company while traveling on a freight train in charge of live stock. He sued the company to recover

damages for the injuries sustained.   The latter an-
swered, pleading a compromise and settlement of his
claim at $2,000, and payment of all his expenses in-
curred during his illness.   Carter replied, admitting
the payment of the $2,000, etc., but asserted that he
was overreached and defrauded in the settlement and
that it was made when he was not in his right mind
because of the illness consequent upon his injuries.
Before bringing suit Carter made a personal tender to
the railroad company of the $2,000 he received by the
settlement and interest.   The judgment Carter re-
covered in the lower court was reversed by this court
on account of the admission upon the trial in the lower
court of incompetent evidence, and because the verdict
of the jury was flagrantly against the evidence.   The
facts as to the settlement were that Carter understood
the transaction, and that the $2,000 paid him was fair
compensation.   These facts were established by the
testimony of the physician in charge of Carter, the at-
torney of the rialroad company, and Carter's grand-
son, a young man of 20 years of age, and only Carter
himself testified to the contrary.   In addition to this
proof, the evidence also showed that Carter soon after
the settlement expressed his approval of it, and while
yet in the hospital he gave his deposition in an impor-
tant case and expended the $2,000 in paying for a
small farm, building a barn on it, and in a loan to his
son; all of this being done before he recovered from
his injuries.   The grounds for reversal are given in
the opinion, supra, as follows: "When it is remember-
ed that while at the hospital appellee gave a deposi-
tion in an important case and paid out the money ob-
tained by the compromise to various persons for land
and work and material, and loaned some of it out, and,
on the other hand, the conflict of the testimony of the

witnesses as to whether appellee's mind was good as usual,. yet no one saying it was worse than impaired, we conclude that the verdict was contrary to the evidence on this point.   The weight of the evidence as to the fairness of the compromise agreement, as well as to the ratification, is so strongly in favor of appellant, that the court could have  set  aside the verdict and awarded a new trial.'' It will be observed that the opinion does not hold that Carter was estopped to attack the settlement for fraud because he had spent the money received thereby; but it in effect says that fact was properly allowed to be considered as evidence on the question of ratification.   If this were not true the opinion would, in remanding the case, have directed the lower court to give a peremptory instruction in behalf of appellant on the next trial.   In the case at bar it appears from the evidence that appellee, at the time of making the tender to appellant before suit, had spent less than $50 of the $400 he received of appellant.  Though competent as evidence for that purpose, we do not think such expenditure constituted a ratification of the compromise relied on by appellant, and it is manifest that it was not so intended by appellee; for, according to his testimony, as soon as he discovered the true amount he had been paid by appellant, and that he had been deceived by its agent, Donahue, he took legal advice as to his rights, and soon thereafter instituted suit, but, finding before doing so that the tender was necessary, he was furnished by his attorneys the sum required, with what he had, to make up the $400.   In making the tender it was not necessary for him to offer to repay appellant the identical $400 received of it.  Any other $400 of legal tender money would have answered just as well.

We have examined the instructions given by the trial judge, and with the exception of one or two im-

Louisville & Nashville Ry. Co. v. Helm.

material errors, which were not prejudicial to appellant, we think them substantially correct.  We are also of opinion that they presented all the law of the case, and therefore no error was committed by the court in refusing the instructions offered by appellant.

The verdict is not excessive.  Five thousand dollars is not unreasonable compensation for the loss of a leg, to say nothing of the physical and mental suffering which must have attended its fracture and the amputation that followed.

Judgment affirmed.

. Petition for rehearing by appellant overruled.