CASE 59—ACTION BY M. B. BRAMBLE AGAINST THE CINCIN-
NATI, FLEMINGSBURG & SOUTH EASTERN R. R.
CO. FOR PERSONAL INJURIES—March 4.

# Bramble v. Cin. F. L. & S. E. R. R. Co.

Appeal from Fleming Circuit Court.

JAMES P. HARBESON, Circuit Judge.

From a directed judgment for defendant plaintiff
appeals—Reversed.

1. Release—Fraud—Tender—Where a release given by an injured
employe is assailed on the sole ground of fraud and misrep-
resentation, a tender of the amount received under the release
is a condition precedent to contesting the release.

2. Release—Setting Aside—Tender as Condition Precedent—In
an action for injuries to an employe, the defendant alleged a
release and want of tender of the consideration therefor.
Plaintiff showed by the pleading and evidence that, though he
claimed the release fraudulent, it was represented to him that
the employer had insurance on its employes, and that a release
was needed to obtain it, and that they did get insurance money
and donated it to him. **Held,** that a tender was not a condition
precedent to contesting the release, as the question of dona-
tion was involved, which, if the evidence sustained it, was for
the jury.

3. Release—By Injured Employe—Time of Making—Settlements
made with injured employes immediately after the accidents
are not looked on with favor by the courts.

4. Release—Contesting Release—Estoppel—That an injured em-
ploye, after executing a release to the employer, accepts money
from him with knowledge that he claims that the release is in
full settlement of all claims for damages, does not estop the
employe as matter of law from contesting the release as
fraudulent.

JAMES ANDREW SCOTT, JAMES H. POWER and O. R. BRIGHT for appellant.

JOHN P.McCARTNEY and B. S. GRANNIS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This action was brought by appellant to recover damages for personal injuries sustained, caused by the falling of a trestle which percipitated the train upon which he was riding to the ground some distance below. Upon the conclusion of the evidence for the appellant, the court directed the jury to return a verdict for appellee. As this ruling was evidently influenced by the evidence which tended to show that before the institution of this action the appellant had settled his claim for damages with the company, we do not deem it necessary to examine any other question in the case. Indeed, counsel on both sides confine their argumnts to a discussion of the question whether or not appellant by the acceptance of the money paid him by the company was estopped to attempt to recover damages; it being conceded that he did not return or offer to return the money. In its answer the appellee set up that in consideration of the payment of $175 and the settlement of doctors' bills and nurse hire, the appellant released the appellee from all claims or demands upon it, and it filed with the pleading a writing signed by the appellant, in which he accepted the money in full satisfaction of any claim he had or might have against the company. In a reply the appellant, while admitting that he signed the paper releasing the appellee company from liability, averred: That he was unable to read or write; that the paper was not read to him at

the time he signed it; that when the paper was pre-
sented he was confined to his bed and suffering se-
verely from pains produced by his injuries; that ap-
pellee through its agents represented to him that it had
accident insurance on its employes, and it desired the
paper executed for the purpose of securing the insur-
ance which it carried upon him as one of its employes;
that after it received from the company the insurance
it voluntarily donated the same to him; and, further,
that the paper was procured by fraud.

The appellee company did have insurance upon its
employes protecting it from damages for injuries sus-
tained by them while in its employment, and did re-
ceive from the insurance company on account of the
injuries sustained by appellant $175, the amount paid
to him at this time; but there is sharp conflict in
the testimony as to what representations or state-
ments were made when the paper was signed. The
appellant's version is that he could not read or
write, and the contents of the paper he signed were
not read to him, that he signed it under the belief
that it was a receipt to the insurance company for
money coming to him from it on account of its
insurance upon the employes of appellee, and he did
not know that it was in full settlement of any claim
he might have against the company for damages. On
the other hand, the representative of the railroad com-
pany states that he fully explained to appellant the
purport and contents of the paper, and appellant sign-
ed it with his mark understanding that the money paid
was in full setlement and discharge of any claim for
damages appellant might have against the company.
He further said that on the day the alleged settlement
was made the agent of the insurance company in which

appellee had its employes insured was in the city of
Flemingsburg for the purpose of effecting a settle-
ment with the company, and that the insurance com-
pany paid to the railroad company the $175 paid to
the appellant. He testified that the settlement with
Barnes was made on behalf of the railroad company
and not the insurance company, and that the insurance
company had nothing to do with it, except that it paid
to the railroad company the money. This setlement
was made on the 22d day of May, 1907, about 10 days
after appellant was injured. Some two months after
this, appellant, being much in need of money and un-
able to work on account of his injuries, requested the
company to give him money, and granting his request
the company placed him on the pay roll, and the wages
that he would have received if working were paid to
him for some three months. At the time he requested
the company to pay him more money, appellant, al-
though insisting that no settlement had been made with
him except to pay the money due him by the insur-
ance company, was aware of the fact that the railroad
company claimed that it had settled with him in full
and that he had accepted the $175 in satisfaction and
discharge of any claim he might have against it.

Upon this state of facts, it is the contention of the
appellee company that, although the appellant may
have been deceived by the representations made to him
when the $175 was paid, and although he may have
accepted that sum and signed the release under the im-
pression that it was money paid by the insurance com-
pany, and that he did not release any claim for dam-
ages he might have against it, yet that afterwards,
and with knowledge of the company's contention in
regard to the settlement, he fully ratified the same by

accepting other money from the company, and that this ratification estopped him from bringing this action, and, in addition thereto, he could not maintain it without first refunding to the company the money received from it.   On the other hand, it is the contention of appellant that it was a question for the jury to determine whether or not the $175 paid and the release executed by appellant was in satisfaction and discharge of any claim he might have against the company, or only a donation, and, further, that the other money paid him was for time lost during his inability to labor, and its acceptance, although made with full knowledge of the company's contention, was not a ratification of the first settlement.   At this point it may be observed that, when appellant was put on the pay roll of the company, and the wages he would have earned if able to work paid to him for two or three months, there was no agreement or understanding between the parties as to these payments being in settlement or satisfaction of any claim appellant had against the company.   The company seems to have recognized the financial difficulties under which appellant labored and was willing to aid him by giving him the wages that he could have earned if he had been able to work.   So that the questions in the case are: (1) Was it necessary that appellant should have tendered to the company the $175 received by him before he could maintain this action, and (2) did he ratify the settlement made by demanding and receiving more money from the company after he had knowledge of the fact that it claimed the $175 was paid in full settlement and satisfaction of his demands against the company?

If the only ground upon which appellant sought to

be relieved from the effect of the writing executed by
him was that it was procured by fraud and misrep-
resentations, then before he could maintain an action
for damages he must have paid or offered to pay to
the company the amount received. On the other hand,
if appellant's view of the matter is true, and the
receipt was obtained by fraud, and the money given to
him as a donation, a tender was not necessary. This
distinction is clearly recognized in the cases decided
by this court. Thus in L. & N. R. R. Co. v. McElroy,
100 Ky. 153, 37 S. W. 844, McElroy, who was injured
while in the employ of the company, brought an action
to recover damages. The company in its answer
pleaded that shortly after the accident it paid to Mc-
Elroy $700 in full settlement of all claims and demands
on account of his injuries and filed with its pleading a
receipt signed by him. This receipt is attempted to
avoid upon the sole ground that it was obtained by
fraud and misrepresentation at a time when he was
unable to fully understand the purport of the paper.
The only issue in the case concerning the settlement
was whether or not it was obtained by fraud and mis-
representation. There was no pleading or evidence
that the money was paid for anything except to com-
promise and settle his claim for personal injuries, and
the court held that he should have paid or offered to
pay the money received in the settlement before he
could maintain his action, saying: "The general rule
is that, when one has received money or property
under a contract that is voidable for fraud or other
reason, he must repay the money or tender the prop-
erty before he is entitled to have the contract re-
scinded." The principle announced in this case was
followed in Home Benevolent Society v. Muehl, 109

Ky. 479, 59 S. W. 520; Shields v. Lewis, 49 S. W. 803,
20 Ky. Law Rep. 1601; L. & N. R. R. Co. v. Helm,
121 Ky. 645, 89 S. W. 709; City of Louisville v. Lou.
Ry., 68 S. W. 840, 24 Ky. Law Rep. 538; I. C. R. Co.
v. Vaughn, 111 S. W. 707, 33 Ky. Law Rep. 906. As
distinguished from this line of cases we find McGill
v. L. & N. R. R. Co., 114 Ky. 358, 70 S. W. 1048.
There, in avoidance of a receipt executed by him,
setting out that he received $210.25 in full compro-
mise and settlement of all claims and demands he
might have against the company on account of per-
sonal injuries sustained, McGill pleaded that the re-
ceipt was obtained by fraud and misrepresentation,
and that the money was not paid or received in set-
tlement of his claim for damages; but for time lost
and a medical bill. Although the money was not ten-
dered, the court held that he was entitled to have
submitted to a jury the question whether or not the
money was paid in settlement of his claim for dam-
ages or for lost time and the medical account. This
case was followed in Continental Tobacco Co. v.
Knoop, 71 S. W. 3, 24 Ky. Law Rep. 1268; I. C. R.
R. Co. v. Belt, 93 S. W. 601, 29 Ky. Law Rep. 421;
Ingram v. Covington, F & A. R. R. Co., 89 S. W. 541,
28 Ky. Law Rep. 508; I. C. R. R. Co. v. Edmonds, 111
S. W. 331, 33 Ky. Law Rep. 993.

It will thus be seen that it is only when the receipt
is assailed upon the sole ground of fraud and mis-
representation is it necessary that the money re-
ceived under the settlement should be tendered. If
the person receiving the money asserts in an appro-
priate pleading that it was received by him for any
other purpose than in settlement of his claim for
damages, and that the receipt given was obtained by

fraud or misrepresentation, a tender is not necessary, and if the plea is supported by sufficient evidence the question should be submitted to a jury. These day after the accident settlements, made by corporation agents with injured employes, are not looked upon with favor by the courts. The transaction on its face has too often the appearance of overreaching and undue advantage. The parties are not on an equality. They are not dealing at arm's length. An injured employe, confined to his bed, suffering with pain, unacquainted with the full extent of his injuries, and not knowing how long he will be incapacitated to labor, and frequently in urgent need of money to defray the necessary current expenses of himself and family, is not in a condition to cope intelligently with an adroit, experienced, and plausible claim agent. But the point is strongly pressed in argument that appellant ratified the settlement the company claims it made with him by demanding and receiving from it the subsequent payments with full knowledge on his part that the company insisted that he received the $175 fully understanding that it was paid in settlement of any claim for damages he might have and not on any other account, and the argument is made that, having thus ratified the settlement, appellant will not now be heard to say it was fraudulent, and is estopped by his conduct from attempting to avoid it. We do not think it can be held as a matter of law that appellant by accepting the wages estopped himself from disputing the validity of the original writing executed by him. The mere fact that he knew what the company's claim was at the time he permitted himself to be put on the pay rolls did not amount to a ratification by him of the settlement alleged to have been

made; but it was competent to show these subsequent payments as evidence bearing upon the question of the execution of the receipt. The real issue in the case turns upon the transaction that took place when the receipt was executed.

The judgment is reversed, with directions for a new trial in conformity with this opinion.