## Burton v. Ott.

(Decided December 4, 1928.)

### Appeal from Warren Circuit Court.

1. Pleading.—Under Civil Code of Practice, sec. 93, objection that pleading does not state facts sufficient to constitute cause of action or defense must be made by a general demurrer, and cannot be made by a motion to strike, and motion to strike on such ground is properly overruled.

2. Appeal and Error.—In action against beneficiary under life insurance policy, on ground that change of beneficiary from plaintiff to defendant was obtained by fraud, undue influence, and as result of insured's mental incompetence, defendant cannot complain of ruling whereby, near close of trial, all evidence thereafter offered was excluded, except as to mental capacity and undue influence, where defendant did not offer any other evidence, nor have any other to offer.

3. Interpleader.—Where change of beneficiary in life insurance policy was alleged to have resulted from undue influence and mental incapacity of insured, question is for jury, if there is any evidence.

4. Interpleader.—Evidence that insured named his niece as beneficiary in January, and in April named his stepdaughter, without anything to explain change of mind, except that he had gone to stepdaughter's residence, together with evidence as to his old age and deplorable physical condition from disease that affects the mind, held sufficient to take case to jury on questions of mental incapacity and undue influence.

RODES & HARLIN and CHARLES DRAKE for appellant.

DAFOE & MYERS, SAMUEL S. BLITZ and STOUT & HERDMAN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Thomas Havey had a policy of life insurance for $1,000, payable to his wife, who died in December, 1926. After this, on January 11, 1927, he changed the beneficiary, and made his niece, Margaret C. Ott, the beneficiary of the policy. On April 2, 1927, he changed the beneficiary again, and made his stepdaughter, Lula Burton, the beneficiary of the policy. On January 23, 1928, he having died a few months before, Mrs. Ott brought this suit against Mrs. Burton and the insurance company, alleging in her petition that the defendant Lula Burton, who was no blood relation of the insured, by fraud and

undue influence and for the purpose of depriving the plaintiff of the insurance, did induce Havey to revoke the name of the plaintiff as beneficiary and substitute defendant's name as such, and "that said revocation and substitution was done by fraud, undue influence and when said Havey was mentally incompetent, and was a fraud on plaintiff and her rights." The insurance company paid the money into court; the issues were made up and on final hearing the jury found for the plaintiff. The defendant appeals.

The facts shown by the proof are briefly these: Havey had no use of his hands. He could walk, but he could not feed himself; he could not dress himself or undress himself, or attend the calls of nature without help. He and his wife, who was the mother of Mrs. Burton, had no children. Mrs. Ott was his nearest relative. From the time she was four years old, she was raised by him and called him "daddy." When his wife was taken sick, Mrs. Ott left her home and for some weeks devoted her whole time to taking care of the two old people. Mrs. Burton also rendered some assistance, but did not stay there as much as Mrs. Ott, or do the work that she did. After Mrs. Havey's death, according to the proof for Mrs. Ott, Mrs. Burton said she had no room for Mr. Havey at her house and could not take him. Mrs. Ott then took him to her home, and while living there, on January 11th, he named her as beneficiary in the life insurance policy. Mrs. Burton denies that she refused to take him to her house. According to the proof for Mrs. Ott, some weeks later Mrs. Burton's son came up and said to Havey that his mother wished to see him. He then went to her house and did not return. Shortly afterwards the son came back and got his bed. According to the proof of the Burton family, he said when he got there that he had been turned out and had no home, and was crying. But according to the proof for Mrs. Ott nothing of this sort had occurred, and he went simply because Mrs. Burton sent for him. He stayed at Mrs. Burton's from this time until he died, but every day he would go up to see Mrs. Ott, and spent a large part of his time there. She fed him, shaved him, and attended to all the other calls that a man in his condition required while at her house. While living at Mrs. Burton's house, he made her the beneficiary of the policy.

As to the condition of his mind the plaintiff introduced witnesses who stated these facts: For more than a year before he died his mind seemed to be getting bad. He just gradually got worse. He would sit and talk to the walls and look around and act silly. He was rather like all old men are; he would talk one way a while, and then maybe he would get clear off the conversation, and go to talking about something else. The disease he had affects the spinal cord, which runs to the brain. There was very little impairment of the leg muscles. The disease is severely liable to affect the mentality. He was depleted quite a lot physically. The nervous system was involved. He was 70-odd years old. He would cry and talk about outside things. Sometimes he would work his mouth, and not pay any attention to what any one was saying to him. His memory was bad.

On the other hand, the proof for Mrs. Burton was, by a number of witnesses, that his mind was perfectly good and entirely unimpaired. As to undue influence, one witness makes this statement:

"Well, I was sitting there and Mr. Havey came in and Mrs. Ott said to him, 'Pappy, they are telling around here that I run you off;' and she says 'Did I?' and he says, 'No, sir; you didn't, Lula got me to tell this;' he says, 'and if I didn't she would raise the devil with me.'"

Another witness says this:

"Why, he just said that he would have to move down to Lula's; that was all he could hear out of them was his insurance and things they wanted of him. He was done with it. That's what he said."

Another witness says this:

"I heard him say, on Monday before he died on Wednesday, that Mrs. Burton and son would be glad whenever he was dead, so they could get what he had to leave."

The home that he and his wife lived in was deeded to his wife. While living at Mrs. Ott's he employed a lawyer and instituted a suit to sell this property to pay her burial expenses and some other debts. After he moved to Mrs. Burton's he employed another lawyer and had him dismiss the suit, saying that he did not un-

derstand the papers when the suit was brought. As to this matter the witnesses testify that he made the following statements:

> "He said he went down there, and they got mad because he had sued for his place right across from my mother's, and he said Mrs. Burton told him to leave there, and Mr. Burton shooed at him like· he was a chicken."

> "I heard him say, standing beside the mantelpiece there, that he was going to sell that place and pay what he owed. Q. Was Mrs. Burton present? A. Yes, sir. Q. What did she say, if anything? A. Well, she said, 'You can't sell the place.' I believe is the way she spoke it, and he said, 'I don't see why I can't; I bought it and my money paid for it.' "

> "Well, he said Mrs. Burton told him, if he would come up there to live, in order to get this suit taken out of court, she would sell the place and divide it with him and give him enough out of it—divide it with him and give him enough to pay his debts and keep the lawyers from getting it all."

It is insisted for the appellant that the plaintiff's petition was insufficient, in that it simply charged that the transfer of the policy was obtained by fraud and undue influence, when Havey was mentally incompetent, and that the facts should have been alleged. But there was no demurrer to the petition. The objection to a pleading on the ground that it does not state facts sufficient to constitute a cause of action or defense must be made by a general demurrer thereto, under section 93 of the Code. It cannot be made by a motion to strike. Hardy v. Russell, 181 Ky. 287, 204 S. W. 145; L. & N. R. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084. The motion to strike was properly overruled. The case was tried on the merits, and the petition is at least sufficient after verdict and judgment.

It is also insisted that, after much evidence had been heard on other matters, the court erred in ruling, near the· close of the trial, that from that time on all evidence would be excluded, except as to his mental capacity and undue influence. The defendants cannot complain of this ruling, for it does not appear that they offered any other evidence, or had any other to offer. If they desired to complain· of this ruling, they should have made

an avowal of the evidence which they proposed to offer. So far as appears, this ruling affected in no way the trial of the case.

It is well settled that, if there is any evidence, the question is for the jury, and on the whole case it cannot be said that there was not sufficient evidence to take the case to the jury on both the question of mental capacity and undue influence, in view of the fact that in January Havey made one disposition, both of the house and the insurance policy, and in April he made another, and there is nothing in the record to explain his change of mind, except the fact that he had gone to Mrs. Burton's in the meantime. These facts, in connection with the undisputed evidence as to his age and his deplorable physical condition from a disease that affects the mind, considered in the light of his own declarations, clearly made a case for the jury.

There was much evidence for the defendant that Havey was a man of sound mind, and that he made the change in controversy freely and without undue influence. It is insisted for the appellants that the verdict is palpably against the evidence. As to when a verdict should be set aside for want of evidence, this court in Steele v. Logan, 3 A. K. Marsh. 397, thus stated the rule:

> "It is not enough, to authorize a new trial on the ground of the verdict being against the evidence, that the impressions of the court on the evidence may be different from that of the jury, but the preponderance of evidence should be clearly and palpably against the verdict. Such is not, however, the present case."

Again, in Hunt v. Hunt, 3 B. Mon. 576, after restating the rule as above given, the court added this:

> "And further, when a motion for a new trial, moved upon the ground that the verdict was unsupported by the evidence, has been overruled by the court below, this court ought not to reverse the judgment, unless the error was flagrant."

To the same effect, see Hemstein v. Depue, 70 S. W. 190, 24 Ky. Law Rep. 886; L. & N. R. Co. v. Helm, 121 Ky. 645, 89 S. W. 709, 28 Ky. Law Rep. 603; Steinke v. North Vernon Lumber Co., 190 Ky. 231, 227 S. W. 274.

The Constitution, in the Bill of Rights, provides that:

"The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate." Section 7.

And it further provides that:

"Everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate." Section 26.

The reason for the rule is the confidence placed in the verdict of 12 men taken from vicinage and chosen from the different walks of life. Their verdict, arrived at by putting together their common experience and judgment, is the best way the law has devised to arrive at the truth of a contested question of fact. They see and hear the witnesses. They know local conditions and the local way of expressing and looking at things. Being from different walks of life, like the witnesses, they will better understand the witnesses, and arrive at the truth, than a single judge, and much that may influence their conclusion will not appear from a transcript of the evidence heard before them.

In view of all the facts here, the court is unable to say that the verdict is clearly and palpably against the evidence.

Judgment affirmed.