(Decided 20th June, 1883.)

---

THE PENNSYLVANIA RAILROAD COMPANY *vs* JACOB E. WACHTER.

*Action for Personal injury—Risks assumed by an Employé of a Railroad Company—Responsibility of a Railroad company for the Negligence of its Employés.*

W. employed as a repairman by the Pennsylvania Railroad Company, while proceeding down the track on a hand car, on a very foggy

morning to surface up the track, was run into by an extra train coming in an opposite direction, at a rapid speed, and without any previous warning, and was permanently injured by the collison. It was the practice of the company, of which W. had knowledge, to run extra trains without previous notice. In an action against the railroad company by W. to recover damages for the injuries he had sustained, it was HELD :

1st  That when W. entered the service of the defendant as a repairman on its road, he took upon himself the natural and ordinary risks belonging to such service.

2nd. That if with the knowledge that the defendant in the management of its road, was in the habit of running extra trains without notice, and that it was his duty as one of the repairmen to be always on the look-out for danger from that source, he continued to remain in the defendant's service, he must be considered as having assumed the risk to which he was thereby exposed, and having been injured in consequence thereof, he could not recover damages of the defendant.

Where through the fault of persons in charge of a train, the head-light is not exposed in front of the engine in foggy weather, as expressly required by a rule of the railroad company, the company is not responsible for the negligence of such persons, unless it failed to exercise proper care in their selection, or retained them in its service with knowledge of their incompetency.

APPEAL from the Circuit Court for Frederick County.

This suit was brought to recover damages for personal injuries sustained by the appellee by being run into by an engine of the appellant. The case is stated in the opinion of the Court. The jury rendered a verdict for the plaintiff, for $4416, and judgment was entered accordingly. The defendant appealed.

The following are the prayers of the plaintiff, referred to in the opinion of the Court:

2. That if, under the pleadings and evidence, the jury shall find that the plaintiff, at the time of the injury complained of, if the jury shall find such injury, was in the employ of the defendant, and that said injury was occasioned by the negligence of the defendant in failing to ex-

ercise ordinary care and prudence for the protection of the plaintiff and its other employés, in providing reasonable rules and regulations for the government of its agents and employés in the running and management of trains and engines passing over its said road, to give notice to its employés who are required, in the discharge of their duties, to be on and about its railroad track, of approaching trains or engines, and that said injury was the direct result of such negligence and want of ordinary care and prudence on the part of the defendant, and did not result from the want of ordinary care and prudence on the part of the plaintiff, directly contributing to such injury, that then the plaintiff is entitled to recover.

7. That defendant is liable in this action, if the jury shall find that the injury was caused by the negligence of defendant's employés; if the jury shall find that defendant could have made plaintiff's labor less hazardous and more safe, had its rules prescribed that notice of all special or extra trains or engines passing over its track, should be sent out in advance, so far as the same was practicable, and that such a rule would have prevented the injury complained of; provided, that the jury shall find such a rule was required by a reasonable regard for the safety of life and limb of those employed in its service, and was consistent with an efficient working of its road.

The cause was argued before MILLER, STONE, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*James McSherry,* for the appellant.

*Wm. P. Maulsby, Jr.,* and *Milton G. Urner,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

We do not see on what grounds this action can be maintained. The appellee was at the time of the accident, and

had been for at least eighteen months prior thereto, in the employment of the appellant.  On the morning of the 16th of October, 1879, after having performed some work near Woodsborough, he, in company with Eyler, the foreman of the gang, and other repairmen who worked on that section of the appellant's road, proceeded down the track in a hand-car, to surface up the track, when they were run into by an extra train, coming in an opposite direction, which threw the hand-car from the track, and thereby injured the appellee.  The engine approached at a rapid speed, and without any previous warning.  The morning was very foggy, so much so that one could hardly see the engine at a distance of forty yards.

Rule 386, in the book of rules adopted by the company, provides:

" That extra trains may pass over the road at any time, without previous notice, and foremen must always be prepared for them."

Eyler, the foreman, who was examined as a witness for the appellee, says he was supplied with the book of rules and knew of rule 386 ; that he loaned the book one day to the appellee ; that witness had, from time to time, cautioned men to be on the look-out for extra trains passing over the road without previous notice.

The appellee, himself a witness, admits he had seen extra trains pass over the road without previous notice to any one ; that he knew it was his duty to be always on the look-out for such trains; that the position of the men on the hand-car at the time of the accident, facing up and down the road in opposite directions, was to be on the look-out for danger in either direction, and that extra trains, running without previous notice, was one of these dangers.

Upon such proof as this, there ought not to be any difficulty in regard to the rules of law by which the rights and obligations of the parties are to be determined.

When the appellee entered the service of the appellant as a repairman on its road, he took upon himself *the natural and ordinary risks* belonging to such service. And further than this, if he knew the appellant, in accordance with the rules adopted for the running of its trains and in the management of its road, was in the habit of running extra trains without notice, and that it was his duty, as one of the repairmen, to be always on the look-out for danger from that source, and with this knowledge continued to remain in the appellants' service, he must be considered as having assumed the risk to which he was thereby exposed.

Now the proof shows that one of the rules adopted by the appellant in the management of its road, provided that extra trains " may pass over the road at any time without previous notice." Whether the appellee himself had read this rule, or whether it had been read to him by Eyler, the foreman, is not material. He admits he knew it was the practice of the company to run such trains without previous notice ; that it was his duty to be always on the look-out for danger to which he was thereby exposed; that with this knowledge he continued to remain in the appellants' service, and that the position of the men on the hand-car at the time of the accident was for the purpose of avoiding danger from this and other sources.

If this be so, it cannot be said that the mere running of the extra train without previous notice was negligence on the part of the company entitling the appellee to recover.

The appellant, it is true, had no right to expose the appellee to risks not ordinarily incident to his employment as a repairman, and which, by ordinary care on its part, might have been avoided. But it had the right to prescribe rules in regard to the management and running of extra trains, and if the appellee with full knowledge of the running of such trains, and of the danger to which he was thereby exposed, voluntarily continued to remain in the

appellants' service, he has no right to say a better and safer rule might and ought to have been adopted.   On the contrary by thus remaining in a service which necessarily exposed him to hazardous risks, from causes *open and obvious*, the dangerous character of. which he knew, or had every opportunity of knowing, he must be considered as having assumed such risks, and if injured in consequence thereof, he must abide the consequences, so far as any claim upon the company is concerned.   *Stricker's Case*, 51 *Md.,* 47 ; *Woodward's Case*, 41 *Md.,* 298; *Wonder's Case*, 32 *Md.,* 420 ; *Woody vs. Railway Co., L. R.,* 2 *Ex. Div.,* 389.

The second and seventh prayers of the plaintiff granted by the Court, were therefore clearly erroneous.   These instructions are based on the theory, that there was a duty or obligation resting on the appellant requiring previous notice to be given to the appellee and other employés of the running of extra trains, provided this could be done consistently with the efficient working of its road.   Whatever merit there may be in the proposition of law thus announced, it is not applicable to this case, in which the appellee admits he continued in the service of the company with knowledge of the danger to which he was exposed by the running of such trains.

What other acts of negligence are then relied on in support of this action ?   There was negligence, it was argued, in not adopting rules, requiring the *whistle* to be sounded at all *public and private crossings at grade.*   Now the rule of the company in this respect, requires the engine bell to be rung from a point one-quarter of a mile from every road crossing, until the road crossing is passed, and "the whistle to be sounded at all road crossings at grade, where whistling posts are placed."   ·But in reply to this, it is said there are no whistling posts on this branch of the road.   If this be so, it was known to the appellee, and with this knowledge he remained in the appellant's service, without complaint on his part of the danger to which he was thereby exposed.

In addition to this rule, the appellant also required in running extra trains, that the whistle should be sounded *frequently;* and one might suppose such a rule as this would afford equal, if not greater, security to repairmen scattered along the road, than a rule merely requiring the whistle to be sounded at the crossings, and which is intended for persons travelling across the road. Be this as it may, we rest our opinion on this branch of the case, upon the fact that the appellee continued in the employment of the company, knowing that there were no whistling posts at the crossings, and by so doing he assumed the risks to which he was thus exposed, and must be presumed to have acquiesced in the rules adopted by the appellant in the management of its road.

Then again, it was argued the morning was very foggy, and the *head-light* was not exposed in front of the engine. This, however, was the fault of the persons in charge of the train ; for the rules of the company expressly require the head-light to be exposed in foggy weather, and for the negligence of such persons the company is not responsible, unless it failed to exercise proper care in the selection of such persons or retained them in its service, with knowledge of their incompetency. There is no evidence to show the appellant did not exercise proper care in the selection of skilful persons in charge of *the engine,* and the Court below so instructed the jury, to which the appellee did not except. We must therefore consider it a *concessum* in the case.

The evidence does show however, beyond question, that the appellee was crippled for life, while faithfully performing his duty in the service of the appellant, and we have been *studious,* if it be proper so to speak judicially, to find some evidence upon which the question of negligence could be submitted to the jury. But however much his unfortunate condition may appeal to the charity and humanity of his employers, we have not been able to find any evi-

dence, upon which according to the well settled rules of law, this action can be maintained. We are compelled therefore to reverse the judgment, without awarding a new trial.

*Judgment reversed, without awarding a new trial.*

(Decided 20th June, 1883.)