HINZ, Administratrix, Appellant, vs. CHICAGO, BURLINGTON & NORTHERN RAILROAD COMPANY, Respondent.

*March 13 — March 27, 1896.*

*Railroads: Collision between wild train and hand car: Death of section man: Assumption of risk.*

The risk of collision between a fast-running "wild" stock train and a hand car carrying a section crew, due to a dense fog and the noise made by the hand car with the tools upon it, which rendered it impossible to see or hear the train at a distance, is *held*, as matter of law, to have been assumed by an experienced section man riding on the hand car, who knew that such trains might be met and that the section men were expected to look out for them and to take care of themselves.

APPEAL from a judgment of the circuit court for Buffalo county: E. B. BUNDY, Circuit Judge. *Affirmed.*

The plaintiff's intestate was a section man on the defendant's railroad. On the morning of Sunday, September 9, 1894, the hand car upon which the crew of which he was one was going out over its section on its tour of inspection came in collision with one of defendant's locomotives hauling a fast stock train, and plaintiff's decedent was killed. The action is under the statute to recover damages for his wrongful death.

Ordinarily, this crew started out to its daily work at 7 o'clock in the morning. On Sundays it made only a tour of inspection over its section, to see that the track was all right and the roadway safe, and was permitted to choose its own time for doing it. They had agreed on the previous evening to start upon this morning at 6:25 A. M. When they started out at 6:15 it was after sunrise, but the morning was dark by reason of a fog which prevailed and was increasing in density. At this season of the year many stock trains passed over this road; as many as seven or eight trains a day, and sometimes more. This was additional to the ordinary business of the road. It was necessary to run them as "wild" trains; that is, each one was run under the orders of the train dispatcher at La Crosse, and not according to any time card. This rendered it impracticable to notify the section men of the time of their expected passage at any given point. But the section men knew of the fact that such trains were to be expected, and were instructed that they must be on the lookout for them and take care of themselves; that they would have no signals. They did not expect notification of the approach of such trains, other than the usual signals at crossings, stations, bridges, etc. This crew were all experienced in the business and knew the situation. Plaintiff's intestate had been at work on this section more than two years. This morning this crew had in anticipation that they were liable to meet one of these wild trains. They went slowly, listening, and stopped twice to listen for such a train. They did not expect signals, for none were promised them, but they listened for the noise or rumble of a moving train. The noise of their own car, with the jar and rattle of their tools upon it, prevented their hearing the train. They saw it, dimly, coming through the fog, not more than 200 to 300 feet away. This was their first absolute knowledge of the approach of the train. The foreman of the crew cried, "Jump!" Two saved themselves

by jumping. The third, plaintiff's intestate, was struck by the engine, thrown to one side, and killed.

The engineer of the train had omitted none of the customary signals at crossings, stations, bridges, etc. The whistle had been sounded almost instantly before the collision for the bridge across the Chippewa river, and was heard by the engineer at the drawbridge, who also heard the noise of the collision. The bell had been constantly ringing through all the distance from St. Paul, moved by a steam bell ringer. No regulation or custom required the whistle to be sounded at other places than crossings, stations, and bridges; and at these places it was not for a signal to section men or other employees, but only to persons who were about to use the crossings. The engineer was at his post, and attentive to the coming track. He stopped his train without delay. The train was moving rapidly. These stock trains were fast-moving trains,— nearly as fast as the passenger trains,— to alleviate the sufferings of the animals carried, and to prevent loss to their owners.

After the evidence of both sides was all in, the court granted a judgment of nonsuit. This appeal is from that judgment.

For the appellant there was a brief by *Theodore Buehler* and *Hubbard & Taylor*, and oral argument by *C. H. Taylor*.

For the respondent the cause was submitted on the brief of *Losey & Woodward* and *Robert Lees*.

MARSHALL, J. No principle is more firmly established than that the servant assumes all the risks ordinarily incident to his employment, and all risks attending such employment as carried on by the master, known to such servant or which, by the exercise of ordinary intelligence and prudence, under the circumstances of the situation, he ought to know; that when a servant of a railway company has knowledge of the manner in which its trains are run, in re-

Hinz vs. Chicago, Burlington & Northern R. Co.

spect to anything that may subject persons circumstanced as such servant is liable to be in the performance of his duties to danger of personal injury, he is presumed to assume all the risks of his employment resulting therefrom. *Wright v. N. Y. C. R. Co.* 25 N. Y. 562; *Haskins v. N. Y. C. & H. R. R. Co.* 56 N. Y. 608; *Naylor v. C. & N. W. R. Co.* 53 Wis. 661; *Brossman v. L. V. R. Co.* 113 Pa. St. 490; *Larson v. St. P., M. & M. R. Co.* 43 Minn. 423; *Jolly v. D., L. & N. R. Co.* 93 Mich. 370; *Olson v. St. P., M. & M. R. Co.* 38 Minn. 117; *Pennsylvania R. Co. v. Wachter,* 60 Md. 395; *McGrath v. N. Y. & N. E. R. Co.* 18 Am. & Eng. R. Cas. 5. Indeed, the law pertaining to the subject is so well settled as not to be open to serious discussion. The authorities cited by the learned counsel for respondent, included above, so clearly cover the case that the conclusion here reached might well rest on them alone, or stand on a mere statement of legal principles so elementary without any reference to authorities on the subject.

We do not understand that the learned counsel for appellant contended but that the law is as stated. They rely on the existence of the elements of danger of the fog and speed of the train, as rendering the doctrine of assumed risks inapplicable to the facts of this case, at least in so far that the cause should have been submitted to the jury. A like contention was made in *Pennsylvania R. Co. v. Wachter, supra,* where the facts were quite similar to the instant case. W. was employed as a trackman; he was proceeding on a hand car to his work of repairing the track; there was a dense fog; the noise of the hand car was such that he could not hear an approaching train; he knew that he was not on the time of any regular or scheduled train, but that extra trains were likely to be run at any time; he was struck by an extra, coming in the opposite direction at a rapid rate of speed, without any previous warning, and was permanently injured. On these facts the court said, in effect,

there ought not to be any difficulty in regard to the rules of law by which the rights or liabilities of the parties are to be determined; the plaintiff took upon himself all the risks of the service he was engaged in, growing out of the manner in which the work was carried on; he knew, or had a reasonable opportunity to know, how such service was conducted, and must abide by the consequences.

Applying the law above stated and supported, plaintiff's intestate knew, or had reasonable opportunity of knowing, the risks that he subjected himself to in the service in which he was engaged, particularly in proceeding on the hand car, in a dense fog, under such circumstances that he could neither see nor hear an approaching train. He must, therefore, be considered to have assumed the risks attending such conduct, and his representatives must abide by the consequences. They cannot legally be shifted to the defendant, but must rest where they first fell. Such is the law governing this case upon the facts established by the undisputed evidence; hence the trial court properly granted defendant's motion for a nonsuit.

*By the Court.*— The judgment is affirmed.