IVES, Administratrix, Appellant, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Respondent.

*April 18—May 8, 1906.*

*Railways: Injury to sectionman: Assumption of risk: Unlawful and unusual speed of train: Giving of signals: Positive and negative testimony: Immaterial evidence: Orders of foreman.*

1. Sectionmen upon railroads assume the risk of trains of all sorts, regular or "wild," running over the tracks at all times and at such rates of speed as are attainable, without notice or warning except such as results incidentally from the ordinary noises of the train, including such bell and whistle signals as are customary.

2. Such rule applies to trains running at unlawful speed within the limits of a city, where the sectionmen, knowing such unlawful speed to be customary, accept and continue in the employment subjecting them to peril from such practice.

3. The fact that the particular train which injured a sectionman was a freight train running at a greater speed than such trains ordinarily maintained at the place and under the circumstances in question, did not show that the risk was not one assumed by him under the rule.

4. The positive testimony, based upon positive recollection, of conductor, engineer, and fireman, all of whom were upon the engine, that the bell and whistle were sounded as they approached a highway crossing, was sufficient to establish that fact conclusively, as against the testimony of a section foreman, who was approaching from the opposite direction on a railroad velocipede, that he heard neither whistle, bell, nor roar of the approaching train, but who further testified that the ringing noise made by the velocipede made it difficult to hear other sounds.

5. There being conclusive evidence that the bell and whistle on an engine were sounded at a crossing just before a sectionman was struck and injured, testimony as to how far such sounds could be heard was immaterial.

6. The fact that a sectionman was proceeding along the track under the orders of his section foreman did not relieve him from his assumption of the peril of passing trains, of which the foreman had no superior knowledge.

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

Action by plaintiff to recover for the death of her husband, caused by alleged negligence of the defendant. Decedent was a section hand employed by defendant and had had several months' experience in that employment. About 7 o'clock in the morning he, together with another section hand and the section boss, and at the direction of the latter, started in a dense fog eastward from Stanley to go to their work at the next station, riding on a railroad velocipede. They heard a passenger train come into the station from the east, but knew they had plenty of time to reach a road crossing about three quarters of a mile from the station before that train would leave. They also knew and spoke of the possibility of a freight train, No. 29, arriving to meet the passenger, the freight being then nearly half an hour overdue. They progressed at the rate of about four miles an hour to within approximately 200 feet of the road crossing, when suddenly the freight train was seen through the fog approaching them at a distance of 300 or 400 feet. They stopped the velocipede as quickly as possible, one sectionman jumped to the north side of the track, and the decedent, who was seated on the bicycle between the rails, attempted to go to the north side of the track, but evidently just failed to escape the engine, some portion of which struck him on the head and shoulder, causing death. The train was running rapidly, about twenty-five miles according to its engineer, and about forty miles per hour according to the section boss. The road crossing mentioned was the eastern limit of the city of Stanley, so that the place of injury was within those limits where a speed of more than fifteen miles per hour is prohibited by law. The sectionman heard no whistle or bell rung before the crossing, but the train crew all testified positively to the blowing of the whistle and the sounding of the bell. The section boss testified that the rattle of the velocipede would seriously embarrass, if not prevent, him from hearing such sounds. It was customary for trains to run at high rates of speed through the

yards at Stanley, which deceased had for months abundant opportunity to observe. The evidence tended to show that train No. 29 was running faster than was usual for such a train.

At the close of the evidence the court directed a verdict for the defendant on the ground that deceased had assumed the risk from which his death had resulted. From judgment on such verdict the plaintiff appeals.

For the appellant there was a brief by *W. H. Frawley* and *H. B. Walmsley,* and oral argument by *Mr. Walmsley.*

For the respondent there was a brief by *Howard Morris* and *Thomas H. Gill,* and oral argument by *Mr. Gill.*

Dodge, J. The case of *Hinz v. Chicago, B. & N. R. Co.* 93 Wis. 16, 66 N. W. 718, adopting the views expressed in *Pennsylvania R. Co. v. Wachter,* 60 Md. 395, declares the rule that sectionmen upon railroads assume the risk of trains of all sorts, regular or "wild," running over the tracks at all times and at such rates of speed as are attainable, and that, too, without notice or any warning except such as results incidentally from the ordinary noises of the train, including, of course, such bell and whistle signals as are customary. Plaintiff's decedent met his death from such a risk. Nonliability is the legal conclusion from that situation.

Appellant seeks escape from that result, first, by reason of the fact that the accident occurred within the limits of a city where a speed greater, certainly, than fifteen miles per hour, perhaps than six miles, was prohibited by law. However reprehensible, and therefore negligent, such lawlessness may be, yet the breach of the law results in no liability to one who, knowing it to be a custom of the company in the management of its business, accepts and continues in an employment exposing him to peril from such practice. *Abbot v. McCadden,* 81 Wis. 563, 51 N. W. 1079; *Williams v. J. G. Wagner Co.* 110 Wis. 456, 86 N. W. 157; *Kreider v. Wis. River*

360        SUPREME COURT OF WISCONSIN.        [MAY

Ives v. Wis. Cent. R. Co. 128 Wis. 357.

*P. & P. Co.* 110 Wis. 645, 657, 86 N. W. 662. That defendant was accustomed to run its trains through the city of Stanley at full speed without regard to the legal limit, and that deceased knew it, was undisputed, indeed proved by the only eye-witness of the tragedy whom plaintiff called. Hence the fact that the speed of the train in question was illegal is of itself without significance.

Another contention of appellant is that this train was running at a speed greater than freight trains ordinarily maintained through the city, and especially much greater than that of freight trains approaching the station with the purpose of entering a side track to allow a passenger train to pass, as was that which caused the injury; hence the risk was not a usual one and not assumed. This argument confuses the risk which deceased assumed with considerations of what might constitute other forms of contributory negligence with reference to this particular train. Assuming that he knew that only a freight train was approaching, that it was to take the side track at the switch within a quarter mile to make way for a passenger, there might well be an argument that he was guilty of no negligence with reference to that train in proceeding on the assumption that it would not come upon him at forty miles an hour, but that was not the only risk he assumed. He was bound to anticipate that his employer would use its track to run such trains as any exigency might require; not alone regular freight trains giving way to passenger trains, but specials, freight or passenger, or wild engines, to which right of way might be given over all trains with notice and instructions perhaps to station employees to clear tracks and arrange switches so that no check of speed need occur, but without notice to sectionmen. Such use of tracks by railroad companies is within common knowledge and is usually within the contingencies of the employment which the track walker or the sectionman undertakes. That such was the undertaking of the section workers on defendant's road

is testified to by the foreman, who says that, independently of regular trains, they were bound to be "expecting any minute a train when you are on the road; got to figure every minute that something comes along;" also that it was the duty of all sectionmen to keep out of the way of trains. There is no suggestion that forty miles per hour is an unknown or even unusual rate of speed for some trains or engines; indeed, common knowledge is to the contrary, and the risk of a train at that speed at any moment which deceased assumed was not varied by the fact that it was unusual for this particular train to run so fast. We can discover nothing in such fact to show that the risk from which decedent suffered was not among those which he must be held to have assumed under the rule of *Hinz v. Chicago, B. & N. R. Co.* 93 Wis. 16, 66 N. W. 718.

Appellant's further argument, that there was a jury issue as to whether the bell and whistle were sounded upon the train upon approach to the highway crossing, and that a departure from custom in that respect would be negligence not within the risks plaintiff assumed, is met in our judgment by respondent's contention that there was no such issue, but that such signals were proved without dispute. It has often been declared that when credible and unimpeached witnesses, having exact and certain knowledge so that they cannot be mistaken, testify affirmatively to the existence of a fact, such testimony is not put in issue by mere negative evidence of persuasive facts which, but for the affirmative evidence, might support an inference against the existence of the material fact; where at least the negative testimony may within reason be true and yet the fact may have existed. *Bohan v. Milwaukee, L. S. & W. R. Co.* 61 Wis. 391, 21 N. W. 241; *Koepke v. Milwaukee,* 112 Wis. 475, 88 N. W. 238; *Konkel v. Pella,* 122 Wis. 143, 99 N. W. 453. In the present record is the positive testimony of the conductor, the engineer, and the fireman, all of whom were on the engine, that these sig-

nals were given, based as they declare on positive recollection. The improbability of any omission on this point is enhanced by the fact that they knew they were approaching another train, and were within a minute of the limit of time at which the operators of that train would have a right to assume that no train would approach from the east and might take some action tending to put one or both trains in peril. The conductor was riding on the engine partly from that consideration. Against this is only the testimony of the section foreman that he heard neither whistle, bell, nor roar of the approaching train, but he at once deprives this of significance by testifying that the velocipede makes a ringing noise on the rails, and replied to question, "Didn't it make so much noise that you couldn't hear the bell of that train or whistle?" "Pretty hard when you are on the car," "on account of the car ringing." "That is a common experience with sectionmen whether with velocipede or handcar." He also testified that he and deceased were conversing; also that he did not hear anything of the other noises of the freight train. Appellant's suggestion that the same witness did hear the whistle of the passenger train behind him at much greater distance is neutralized by the fact that they stopped the handcar in order to listen and thereupon heard it. This state of the evidence also rendered immaterial the trial court's refusal to permit the foreman to testify how far an engine whistle or bell can be heard, even if the questions so framed might be construed as inquiring as to results of the witness's experience and observation, and not for mere opinion. *Hanlon v. Milwaukee E. R. & L. Co.* 118 Wis. 210, 224, 95 N. W. 100.

It is strenuously argued by appellant that, because deceased was on the velocipede by direct order of his superior, he is absolved from any assumption of the risk, or at least that constitutes a new element which necessitates submission of the question to the jury. Doubtless there may be cases where a direct order from one having superior knowledge as to existence of dangers may constitute such an assurance against their

existence that the subordinate when obeying may be absolved from contributory negligence when otherwise he would not, but, like every other situation where, upon all the evidence, including such direct order, there can in reason be but one conclusion, it is the duty of the court to so rule. Any contention that a direct command from a section boss to his crew to go or be upon the track negatives their assumption of the peril from passing trains the immediate proximity of which is known neither to them or him would effectually emasculate the rule of *Hinz v. Chicago, B. & N. R. Co.* 93 Wis. 16, 66 N. W. 718, for we apprehend that the handcar seldom if ever starts over the track save by such command. In the case on which appellant relies, *Long's Adm'r v. Ill. Cent. R. Co.* 113 Ky. 806, 68 S. W. 1095, the jury question was found not from the command alone, but from numerous facts tending to show ignorance on the subordinate's part of the full risk and such superiority of knowledge by the foreman that the former might well have believed from the command that the danger did not exist. In the case at bar there is not a suggestion of any knowledge either of the general perils or the specific danger on the part of the foreman which was not fully shared by the deceased, and we can discover nothing in the fact that they were proceeding along the open track, away from station grounds, under his orders, to relieve decedent from his assumption of all risks from the ordinary operation of the railroad, including that of a train at high speed.

We are unable to say that the trial court was wrong in concluding that the evidence established conclusively and without opportunity for reasonable difference of opinion or inference, that deceased had full knowledge of the imminence of such perils as that from which he suffered, and that, by accepting and continuing his employment, he assumed the same so that the defendant could not be liable even if negligent in creating the peril.

*By the Court.*—Judgment affirmed.