VAUNDRY, Administrator, Appellant, vs. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, Respondent.

*November 14—December 4, 1906.*

*Railroads: Negligence: Injuries to employees: Sectionmen: Assumption of risk: Contributory negligence: Operation of trains: Signals and warnings.*

1. Under the evidence, stated in the opinion, a railroad sectionman, sent to place a flag to warn trains to slow down as they approached the place where other sectionmen were working, is *held*

to have assumed the risk of his own safety from an extra train running over the tracks without notice or warning except such as resulted incidentally from the ordinary noises of the train, including such bell and whistle signals as were customary.

2. Where a railroad sectionman, in the discharge of his duty, was killed while moving toward an approaching train of which there was an unobstructed view for 600 or 800 feet ahead of him, the deceased was *held* guilty of contributory negligence precluding recovery, eveh if there was negligence on the part of the railroad company.

3. In the absence of statutory regulation, employees of a railroad company are not required to signal by whistle or otherwise merely because the train is rounding a curve.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

This is an action to recover damages by reason of injuries caused by the alleged negligence of the defendant October 8, 1904, which resulted in the death of the plaintiff's intestate, then in the employ of the defendant. Issue being joined and trial had, the court at the close of the plaintiff's testimony granted a nonsuit, and from the judgment entered thereon the plaintiff appeals. The evidence tends to prove that the deceased would have been twenty years of age November 11, 1904; that he lived with his father at North La Crosse, near the Burlington shops; that his father had for many years been employed as a switch-light tender for the Burlington Railway Company and lived about four blocks from the railroad tracks; that the deceased commenced helping his father in such work when he was about ten years of age, and after that continued to help him in such work until he entered the employ of the defendant as a sectionman in 1899, since which time he had worked for the defendant as a member of a section crew, working under the direction or control of a section foreman or boss. While his father was working on the railroad and for ten or eleven years he used a railroad velocipede or bicycle, and the deceased was accustomed to ride on it with his father and used it some alone. On the morning in question the section foreman told the crew of which the

deceased was a member to go to work about three fourths of a mile east of Medary, and told the deceased to take the velocipede and go and stick up a slow-flag half a mile further east of the place where the men were to be at work, and then to return and work with the men until after dinner, and then, if he (the foreman) did not return after dinner, to patrol the track. The men were to raise the track, loosen the rails, raise it up, and surface the same. The purpose of putting up a slow-flag was to caution all trains going west to run slowly where the men were at work. The foreman had gotten the velocipede a day or two before for that purpose, and cautioned the deceased to be careful in using it. Velocipedes were in constant use on railroad tracks. Sometimes, in patroling the track, the deceased had walked; sometimes he had taken more men and a handcar. Such directions were given at the toolhouse at Medary, 400 or 500 feet from the tower, about 7 o'clock of that morning. The tower is for the purpose of handling the interlocking plant. There was an extra train from the east that morning, but the foreman did not know the fact when he sent the deceased to put up the slow-flag; but he knew that there were extra trains on the road very often. Regular trains run on schedule time; extra trains under orders from the train dispatcher. The slow-flag was so ordered for no particular train, but for any train that might come. Such extra trains are quite frequent at times—sometimes three or four a day, then none; but extra trains were of common occurrence. When out working on the road there was no way for the men to know whether extra trains were coming. Slow-flags are put out for extra trains as well as regular trains, or whether any are known to be coming or not. They are put on the right-hand side of the approaching train, and mean for trainmen to have their trains under control. When trains are coming, men working along the track must get out of the way. Such men cannot keep in communication with the tower man to find out whether trains are coming. They are liable to come at any

time. In going up to put out the slow-flag the deceased went in the direction of the mud cut that morning. That cut was between 500 and 600 feet long and curves two degrees, and the curve continues for a considerable distance beyond the cut. Standing at one end of the cut a person could easily see a railroad train as it entered the other end of the cut. The accident occurred in the cut, and about half way between the middle and the east end. The deceased could have seen the approaching train 600 or 800 feet ahead of him from the place where he was struck. There were no printed regulations as to the duties of sectionmen while at work, except that they must govern themselves according to all trains. They have to protect themselves. About half past 6 o'clock on the morning in question the telegraph operator in the tower got a report from Sparta, seven miles distant, that an extra train was approaching from the east, and he could have told the section foreman, had he inquired, but he did not. He was in the habit of telling any one who asked him. The sectionmen heard one long whistle, and then, after the train came on a ways, they saw the handcar—velocipede—going under the engine, breaking.

*William S. Burroughs,* for the appellant.

*Edward M. Hyzer,* for the respondent.

CASSODAY, C. J. Upon the evidence, of which a general summary is given in the foregoing statement, the trial court granted a nonsuit. On the part of the plaintiff it is claimed that the evidence tends to prove that the injury was caused by the negligence of the section foreman, who was at the time a co-employee with the deceased within the meaning of the statute. Sec. 1816, Stats. 1898, as amended by ch. 448, Laws of 1903. Such negligence is said to consist in his failure to ascertain from the telegraph operator in the tower that a train was expected to arrive from the east and then to inform the deceased of the fact before sending him to put up the slow-flag. But the only reason for sending the deceased

to put up the slow-flag was because some train was then expected from the east. It might be quite near or it might be quite distant. After putting up the slow-flag the deceased was to return and work with the crew during the forenoon, and, if the foreman did not return, then he was to patrol the track during the afternoon. According to the evidence the slow-flag was to inform the men operating the train, so as to keep the same under control. As stated by the trial court, it is not the practice and it is not expected that the section foreman will be with his crew during all the time they are at work. When so at work they necessarily assume the risk of their own safety. This court has recently held that "sectionmen upon railroads assume the risk of trains of all sorts, 'regular' or 'wild,' running over the tracks at all times and at such rates of speed as are attainable, without notice or warning except such as results incidentally from the ordinary noises of the train, including such bell and whistle signals as are customary." *Ives v. Wis. Cent. R. Co.* 128 Wis. 357, 107 N. W. 452. The testimony on the part of the plaintiff brings the case squarely within the rule thus stated. The statute cited precludes recovery where the injured party is guilty of contributory negligence. The deceased was necessarily going toward the approaching train at the time. According to the testimony there was nothing to obstruct his view of the train for 600 or 800 feet ahead of him. So, as held by the trial court, if there was negligence on the part of the defendant, still the deceased "was equally guilty of contributory negligence on his part." So we concur with the trial court in holding that there is no statute requiring the employees of a railway company to signal by whistle merely because the train is rounding a curve. Besides, it appears that the whistle was blown some time before the accident. We fail to find any reversible error.

*By the Court.*—The judgment of the circuit court is affirmed.