## JOHN LINDSTROM v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 4, 1915.

Nos. 19,327—(140).

**Negligence — burden of proof.**

1. In an action for damages by a section hand for injuries received in a collision between a handcar on which his crew was riding and a train, the burden is upon plaintiff to prove the negligence alleged; the mere fact of collision raises no presumption of negligence either of his foreman or the train crew.

[1] Reported in 152 N. W. 875.

**Evidence.**

> 2. The evidence examined and *held* insufficient to support a charge of negligence against defendant or any of its servants.

Action in the district court for Ramsey county to recover $37,000 for personal injury received while riding on a handcar. The case was tried before Dickson, J., who when plaintiff rested granted defendant's motion to dismiss the action. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Douglas, Kennedy & Kennedy,* for appellant.

*M. L. Countryman* and *A. L. Janes,* for respondent.

HOLT, J.

This action for damages on account of injuries received when a handcar, used by plaintiff, was struck by defendant's freight train, was dismissed when plaintiff rested. The appeal is from the order denying a new trial.

The testimony disclosed this situation, in substance: Plaintiff was a section hand in the employ of defendant. He had worked as such for defendant near the village of Monticello for 18 or 20 years. The section in care of plaintiff and his crew was six miles of track immediately east of the village. The crew consisted of a foreman, plaintiff, and one Bluem. In going from place to place upon the track a handcar, propelled by a gasolene motor, was used. In the forenoon of November 29, 1913, the three men started east on the handcar, and, when about six miles out of Monticello, they stopped and removed the car from the track to let a westbound passenger train go by. After the train passed the handcar was replaced and started west, the foreman running it. In going Bluem faced east, thus able to watch any train about to overtake them. When within a mile of Monticello, in a curve, Bluem discovered a freight train bearing down on them from the east, but, owing to the dense fog, he claims the train could not be seen, and was not seen, until it was within 100 or 150 feet of the handcar. He gave the alarm at once and at the same instant the locomotive engineer, noticing the men, whistled. The car was stopped immediately, and order given for its hurried removal.

129 M.—33.

Seeing their efforts fail the men rushed from the impending peril, and succeeded, except plaintiff, who was struck in the back by the handcar as it was cast from the track by the locomotive. Bluem testified the handcar did not run over 60 feet after he discovered the oncoming train. According to his testimony the train traveled 210 feet, while the car traveled 60 feet. If the speed of the train was 30 miles an hour, only about five seconds elapsed between the discovery of the train and the collision. But Bluem's estimate of speed was apparently the merest guess, or else his estimated distance away when he first noticed the train was wide of the mark. Running a handcar 60 feet to a stop and partly removing it from the track must consume considerably more than five seconds of time.

Out of the many items of negligence alleged these are claimed proven: (a) Negligence on the part of the train crew in failing to signal, and in running at excessive speed; (b) negligence of the foreman in running the handcar in a dense fog without knowing of, or taking precaution against, the freight train; and (c) the negligence of the foreman in ordering the handcar removed when the collision was impending.

This is not a collision to which the evidentiary rule of *res ipsa loquitur* applies, nor is it invoked by appellant. It is common knowledge that the use of handcars on railroad tracks is not supposed to stop or interfere with trains, but the section men are to keep handcars off when trains approach, and that without any special warning or notice to them. Therefore, before the foreman of a section crew may be charged with negligence in failing to know of a coming train, facts tending to establish want of requisite care upon his part must be shown.

No proof was offered that it was necessary, advisable, or customary for trains to signal by whistle or bell continuously when runing through country districts in times of heavy fogs, nor that in such weather the speed of this train was out of the ordinary. It cannot be assumed that ordinary care requires trains running during fogs, through the open country, to continuously or intermittently blow the whistle. In dense fogs curves would seem to be on a par with straight tracks, so far as audible signals go. The train crew gave warning at

once when plaintiff's peril was noticed, and no claim is made of lack of efforts to make the quickest stop possible. We find nothing in the evidence fastening any negligence upon those in charge of the train, nor upon defendant for operating a train during the fog.

Moreover, plaintiff was thoroughly familiar with defendant's usual method of operating its trains, and there is no evidence either of an unusual fog or of anything at all out of the ordinary in the operation of the signals of the train. While it is true that a railroad employee does not assume the risks of a co-employee's negligence, he does assume the risks attending the usual and customary manner in which, to his knowledge, the railroad's business is being conducted, and which risks he fully understands and appreciates. From plaintiff's long service he must be held to have assumed the risks involved in the accident so far as the same arose out of the fog and the operation of the train.

Plaintiff was asked: "Whose duty was it on that work to look out for the trains and keep track of the train schedule," and answered "The foreman." This bald statement is claimed sufficient, with the fact of the accident, to find negligence in the foreman. There was no testimony that the freight was a scheduled train, so that the foreman could know of its approach, and nothing to show that he knew, or in the exercise of care could have known, thereof. It is common knowledge that few of the many trains run on a strict time schedule. Extra, special, or wild trains are every day occurrences, and the section men, who patrol the track and make the ordinary repairs which wear and tear necessitate, have no previous notice of such trains. Plaintiff, from his long service, was no doubt fully familiar with the means of information of trains possessed by the foreman, and of his precautions against the perils from trains. But, still, plaintiff was silent as to what precautions the foreman took in this instance, and did not attempt to state how or by what means the foreman could have been informed of the coming of this train. While the foreman operated the handcar, his men were placed in position to discover danger from both front and rear. Bluem gave the alarm at once upon discovery of danger, and the foreman stopped speedily. We think plaintiff failed to prove actionable negligence in the foreman in not getting the

handcar seasonably out of the way for the freight. And with reference to negligence in ordering the handcar out in the fog, the risks therefrom must be held assumed by a person of plaintiff's experience.

Particularly applicable to this case are the reasons and conclusions which relieved the railroad company from responsibility to an injured plaintiff in Olson v. St. Paul, M. & M. Ry. Co. 38 Minn. 117, 119, 35 N. W. 866; Larson v. St. Paul, M. & M. Ry. Co. 43 Minn. 423, 45 N. W. 722; Hinz v. Chicago, B. & N. R. Co. 93 Wis. 16, 66 N. W. 718; Ives v. Wisconsin Central Ry. Co. 128 Wis. 357, 107 N. W. 452, and Pennsylvania R. Co. v. Wachter, 60 Md. 395.

Plaintiff, to support the contention of negligence in the foreman in not protecting against collision with the freight train, cites Frandsen v. Chicago R. & P. Ry. Co. 36 Iowa, 372; Long's Adm. v. Illinois Central R. R. Co. 113 Ky. 806, 65 S. W. 1095, 58 L.R.A. 237, 101 Am. St. 374; Illinois Central Ry. Co. v. McIntosh, 118 Ky. 145, 80 S. W. 496, 81 S. W. 270; Louisville & Nashville Ry. Co. v. Helm, 121 Ky. 645, 89 S. W. 709, and Mack v. Chicago R. I. & P. Ry. Co. 123 Mo. App. 531, 101 S. W. 142. An examination of the decisions discloses that the section foreman in each accident knew he was running upon the time of a train. Here no effort at all was made to show such knowledge. In the case last cited, after referring to the risks encountered by section men and the duty of the foreman in regard thereto, it is said: "The foreman had no right knowingly to order him (plaintiff section hand) into a place of certain and imminent peril, nor did he have the right to subject plaintiff to risks beyond those incidental to the employment. He knew that the passenger train was past due."

It is very doubtful whether negligence in the order to remove the handcar is pleaded. But that aside, when the section crew noticed a collision unavoidable, unless the handcar was removed, the duty of each one, whether ordered or not, was to make every reasonable effort to remove it. The threatened peril to the persons upon the train, if not the damage to their employer's property, required this. A foreman's orders or conduct in an emergency should not ordinarily serve as a basis for damages, if no negligence preceded and brought about the emergency.

The record is so barren of testimony and circumstances tending to prove negligence of either foreman or train crew that the accidental collision must be referred to as a risk of the employment well known and appreciated by plaintiff.

Order affirmed.