**SPREITLER v. LOUISVILLE & N. R. CO.**

No. 7606.

Circuit Court of Appeals, Seventh Circuit.

Nov. 13, 1941.

Rehearing Denied Jan. 14, 1942.

Jas. A. Farmer, Harold Baltz, and Farmer, Klingel & Baltz, all of Belleville, Ill., for appellant.

P. K. Johnson, P. K. Johnson, Jr., and Johnson & Johnson, all of Belleville, Ill., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

Eleanora Spreitler, as administratrix of the estate of Frank J. Spreitler, deceased, brought action against the defendant, the Louisville and Nashville Railroad Com-

pany, for the death of her decedent. The complaint alleged that Spreitler and one Fournie were driving northwardly along State Highway 159 after dark on the evening of January 15, 1939; just at the edge of the Village of Swansea in Illinois, Highway 159 crosses the Defendant's tracks at grade; that one of the trains of the defendant ran into the truck and killed the decedent.

The defendant was charged with negligence in that a wigwag signal which had been maintained at the crossing in question to warn the public of approaching trains was out of repair and not working on the night of the accident. This signal had been there for over two years. Other acts of negligence charged were failure to blow the whistle and ring the bell for the crossing. The plaintiff produced no evidence of such failure to blow the whistle and ring the bell, and the court instructed the jury that the plaintiff had not proved the negligence charged in this respect, and submitted the case to the jury on the alleged negligence of the defendant in failing to keep the wigwag signal in repair and working. There was a verdict for the plaintiff. Motion by the defendant for directed verdict at conclusion of all the evidence was overruled. This was assigned as error.

The plaintiff relied upon the evidence of Fournie, who was riding in the truck with the decedent. According to his testimony, he was familiar with the crossing and the existence of the wigwag signal. He was riding in the seat opposite Spreitler, who was driving the truck. They were riding in an enclosed cab. It was about 6:30 p. m., and dark. The weather was cold, and a wet snow was falling and sticking to the windshield. There was a windshield wiper in front of the decedent, and it was working. There was no windshield wiper in front of Fournie, and the snow was sticking to the windshield until Spreitler turned on the heater. Then the snow slid down on the windshield and left a hole, and he looked through that hole for a block and a half, trying to see the signal. The truck was going about thirty miles an hour. These questions were asked Fournie and he gave the following answers:

"Q. Now then, what do you say to the jury about the operation of that signal device as the truck approached that crossing? A. I didn't see it working at all.

   *    *    *    *    *    *

"Q. As you were doing that, going up to and on that crossing did you see that signal device operating at any time on that trip? A. No, sir.

"Q. Tell the jury, Mr. Fournie how your eyes are and how they were at that time. A. In good shape as far as I know.

   *    *    *    *    *    *

"Q. * * * on that occasion as you drove along there what had you seen or heard, if anything, of any railroad train? A. Didn't see anything, I looked for the signal blink and I could not see it working away up high. I had to stoop to look up to try to see it.

"Q. Did you see anything? A. No, sir."

On cross-examination, the questions to and answers of Fournie were as follows:

"Q. You didn't see the wigwag working? A. No, sir."

After objection, the question was repeated to the witness:

"Q. You didn't see the wigwag working? A. I didn't see it operating.

"Q. You wouldn't say that it wasn't working or operating though, would you? A. No, sir, I wouldn't say that."

On redirect examination, the following questions and answers appear:

"Q. Was there anything to prevent you from seeing the signal as you looked? A. No, sir, not after the snow fell off.

"Q. Did you ever see it operating on that occasion there while you were coming up there and before you were hit, did you ever see it operating? A. No, sir."

On this testimony, the plaintiff relied entirely for her proof of the charge of negligence she alleged against the defendant. Was the negative testimony of Fournie on the question of whether the wigwag signal was working sufficient to authorize the court to let the case go to the jury and, after verdict for the plaintiff, to sustain the verdict? We do not think so.

The question of whether negative testimony is sufficient to sustain the verdict of a jury depends not only on the nature of the negative testimony but the circumstances surrounding the parties at the time testified about. For one to testify that a thing did not work is an entirely different thing from saying: "I did not see it working." In the one instance, there is unequivocal testimony of a positive nature

that a thing did not work. This would conflict with testimony of a positive nature that the thing did work. But the equivocal statement that: "I did not see it work," does not in any manner contradict or conflict with positive testimony that: "It was working. I saw it working." Both statements could be true.

In the case at bar, the witness, Fournie, testified he was looking for the signal. He had to look through a hole left by snow that had slipped off the windshield, and he had to stoop down to look up to try and see the wigwag signal. Under such circumstances, if he had said the wigwag signal was not working, his testimony would have been sufficient to go to the jury and to support the verdict if one were returned by the jury. But Fournie did not say that. All he would say, in effect, was: "I did not see it working. I would not say it wasn't working. I simply say I didn't see it working." We submit that such an equivocal statement is no evidence at all that the signal was not working. It is only evidence that he did not see.

The record speaks positively that Fournie saw nothing. How can testimony that he saw nothing be tortured into testimony that he saw something and the something was not working? No one disputes the fact that the signal was there beside the road and had been located there for over two years. Fournie never testified that he saw the signal on this occasion, although everyone admits it was there. Was the signal working or not working? That was the question. How could it be said from Fournie's testimony that the signal was not working, when there is no evidence he saw the signal at all? He did not say it wasn't working. He expressly declined to say so. When asked if he would say it was not working, he said: "No * * * I wouldn't say that."

 There was positive testimony by the engineer and brakeman that they saw the wigwag signal and it was working. That positive testimony is in no manner contradicted by or is it in conflict with Fournie's statement that he saw nothing. Since there was no conflict of evidence, there was nothing for a jury to resolve. Since Fournie saw nothing, the jury would be unwarranted in finding that he saw something. The plaintiff had to rely and did rely solely on Fournie's testimony which, in our opinion, proved nothing. Therefore, there was a total failure of proof on the part of the plaintiff to prove the negligence alleged, and the motion for a directed verdict should have been sustained. Baltimore & Ohio Railroad Co. v. Baldwin, 6 Cir., 144 F. 53-56; Horn v. Baltimore and Ohio Railroad Company, 6 Cir., 54 F. 301; Johnson v. Aetna Life Insurance Co., 158 Wis. 56, 147 N.W. 32, Ann. Cas.1916E, 603; Ives v. Wisconsin Central Railroad Company, 128 Wis. 357-361, 107 N.W. 452; Shufelt v. Flint & Pere Marquette Railroad Co., 96 Mich. 327-335, 55 N.W. 1013; Matthews v. Poythress, 4 Ga. 287; Hestle v. Louisville and Nashville Railroad Company, 16 Ala.App. 657, 81 So. 149; Goldstein v. Union Railroad Co., 180 App.Div. 417, 167 N.Y.S. 837; Fraser v. State, 112 Misc. 19, 182 N.Y.S. 491; Franklin v. Minneapolis, St. Paul & S. S. M. R. Co., 179 Minn. 480, 229 N.W. 797; Haskins v. Pennsylvania Railroad Co., 293 Pa. 537, 143 A. 192.

The case is reversed with instructions to sustain the defendant's motion for a directed verdict.