STATE OF NORTH DAKOTA, for Benefit of WORKMEN'S COMPENSATION FUND OF NORTH DAKOTA et al., v. GREAT NORTHERN RY. CO.

No. 13132.

Circuit Court of Appeals, Eighth Circuit.

June 17, 1946.

Arthur W. Stokes, of Grand Forks, N. D. (Carroll E. Day, of Grand Forks, N. D., on the brief), for appellant.

C. J. Murphy, of Grand Forks, N. D. (Murphy, Toner & Kilgore, of Grand Forks, N. D., on the brief), for appellee.

Before GARDNER and THOMAS, Circuit Judges, and DUNCAN, District Judge.

GARDNER, Circuit Judge.

This was a personal injury action in which the court directed a verdict in favor of defendant. From the judgment entered on that verdict plaintiff has appealed. For the purpose of convenience and to avoid confusion, we shall refer to Clarence Ruud as plaintiff and the Great Northern Railway Company as defendant.

Plaintiff alleged that at the time of receiving his injuries he was an employee of Thomas J. Brown, a federal licensed grain inspector, at Grand Forks, North Dakota, and that while he was within the scope of his employment sampling grain was injured by the falling of a door of a grain car. He alleged specific acts of negligence substantially as follows: (1) Failing to warn him of the defective condition of the door at the time defendant directed him to make an inspection of the grain in the car; (2) failing to make necessary repairs to the grain door after notice of its defect; (3) failing to place upon the defective door a mark or warning visible to plaintiff; (4) failing to fasten the defective door so as to guard against its falling; (5) failing to warn plaintiff of the danger existing upon the premises of which defendant had knowledge.

Defendant by its answer denied all charges of negligence and pleaded affirmatively that plaintiff's injuries were due to his own negligence.

As the trial court directed a verdict for defendant we must consider the evidence in the light most favorable to the plaintiff. Johnson v. J. H. Yost Lumber Co., 8 Cir., 117 F.2d 53. So considered we think the evidence may fairly be said to disclose the following facts: Plaintiff was employed as a foreman by Thomas J. Brown, a federal licensed grain inspector, at Grand Forks, North Dakota. He had worked several years as foreman and before that he was a grain sampler. As a foreman his duties were to call at the yard office of defendant Railway Company, secure a list of the cars that were on the tracks for inspection, then go out into the yards, taking the seal records with him, and see that samples of grain were properly taken from each car for inspection. The inspections were limited to cars having a Grand Forks billing. A train of about 100 cars of grain arrived in Grand Forks on the line of defendant before seven o'clock a.m. on March 2, 1942. In this train was a CRI&P car numbered 42473. The train was immediately inspected by car inspectors of the Railway Company. In effecting the inspection two car inspectors worked on each side of the train, one of them commencing at the rear end and working toward the front, and the other commencing at the front end and working toward the rear. The inspector who first discovered a defect in this CRI&P car was Kenneth Smart, who at the time of the trial was overseas in military service. For the purpose of the trial plaintiff admitted that he would testify as set forth in the

showing in support of the motion for continuance. Smart's testimony was to the effect that on his inspection he found a door on this car in need of repair. The grain door was attached to the car at the top by hinges, inside of which were rollers held in place by a bolt, and in opening and closing the door it would move back and forth on a sort of angle iron bar. The hinge on the right side, when facing the car, had become loose and had disappeared, permitting the door to settle down and extend out from the side of the car at the top approximately nine inches. When the door was inspected it was held in position largely by the hasp and staple on the car door. Smart nailed a bad order or disrepair card on the side of the car, the card being 8 inches in length and 4½ inches in width, placing same near the door in the usual place for such cards. This card had printed on it in large type the words "Bad Order." The card also had printed on it lettering to indicate various parts of the car that might be out of repair and before each such printing was a blank space in which "X" could be placed to indicate the part needing repair. Smart placed an "X" in the space before the printed word "Doors," and wrote on the card, "Door Out at Top." He also wrote on the card, in the proper space indicated for that purpose, the words "Repair Track," which indicated that the repair could not be made in the yards. The condition of the door was in due course reported to the yard switching office and the car was removed to the regular repair tracks awaiting repairs. The card was plainly visible to a person standing on the ground. It was of light background with the printing in heavy, dark colors. The car inspection was completed about seven o'clock in the morning. Mr. Thompson was the inspector who inspected the train from the rear end on the north side, while Smart inspected the north side moving from the front end toward the rear. When Thompson and Smart met, Smart told Thompson about this car with the door hanging out at the top, and when they came to the car while walking back to the head end of the train it was pointed out to Thompson by Smart. Thompson saw the door hanging out at the top from six to eight inches, and saw the bad order card nailed on the side of the car midway between the defective door and the front end of the car, and directly under the number stenciled on the side of the car.

Plaintiff was furnished a list of the cars to be sampled. Cars were ordinarily sampled at the "big yards," but six cars were missing from the list which plaintiff had and the rest of the sampling crew went back to the yard office to ascertain by check where these missing cars were. They had been cut out of the train and taken to the repair track while the balance of the train had been switched to the "big yards," about a mile out of town. Among the six cars was this CRI&P car number 42473. Plaintiff observed this car near the yard office on a repair or material track leading to the repair shop. He personally checked the track list and repair list and was given a copy of it for which he receipted. This list showed CRI&P car number 42473 to be "B/O Rip," which plaintiff knew meant that the car was switched to the "rip" or repair track for repairs. From the yard office plaintiff and Houlihan, a grain sampler assisting him, went over to this CRI&P car to sample the grain in it. They approached it from the east, walking up to it on the side having this defective door. Houlihan thereupon removed the seal, and when he did so the door fell, striking plaintiff who at the time was writing the seal number on a record kept by him, and he was severely injured.

The door due to its physical construction and condition, as found at the time of inspection, could not have been closed, nor could the hasp have been fastened over the staple had it been in such condition at the time the door was originally closed and sealed. It follows therefore that the damage to the door occurred at least after the car was loaded and in transit. When the defective condition of the door was discovered the car was immediately placed on the repair track and a "Bad Order" card placed upon it in accordance with the general practice and usage. Plaintiff testified that a yardmaster by the name of Sullivan had at one time told him that the

"Bad Order" cards were for the information of the train crews and the repair men, and that it was none of his business what was on them. Plaintiff testified that "there were no signs on the door or around the door," but the evidence is undisputed that the "Bad Order" card was nailed on the side of the car.

Plaintiff was an invitee upon defendant's property. Defendant would therefore be liable to plaintiff for personal injuries suffered by him proximately caused by defendant's negligence. The negligence here alleged is that of failure to give proper warning and possibly a failure to have repaired the door at some earlier time. Plaintiff was not a consignor intending to use the car for some particular purpose, nor was he a consignee engaged in unloading goods shipped to him over defendant's line. There is no evidence as to when this car became defective but the physical facts prove conclusively that the car was not in this defective condition at the time it was closed and sealed. The burden of proof to establish negligence was, of course, upon the plaintiff. The car had been taken from the train of which it had been a part and put on the repair track. The car list furnished plaintiff showed that it needed repairs. The bad order sign gave notice of the nature of the defect, which would carry with it warning that the door might be dangerous to one who would handle it. The general statement of plaintiff that there were no signs on the door or around the door does not raise an issue of fact as to whether the bad order sign had been placed on the car. Spreitler v. Louisville & N. R. Co., 7 Cir., 125 F.2d 115. It was not required to be placed on the door.

In addition to the fact that the car list given plaintiff showed that the car needed repairs and that it was on the repair track for that purpose, and the fact that the car had on it the bad order sign, the evidence was without dispute that the condition of the door was apparent to one who looked at it. With warning that the car was in bad order, an invitee was put on his guard, and the bad order card showed that the door was in bad order. Defendant was not an insurer of the safety of plaintiff and had a right to assume that this man of mature years and wide experience would, while on defendant's property, exercise ordinary care for his own safety, and it can not be charged with negligence for its failure to anticipate that plaintiff would not exercise such care. One is not under the duty of anticipating negligence on the part of others who have reached the age of maturity and are in possession of all their physical and mental faculties, but is entitled to assume and to act on the assumption that others will exercise ordinary care for their own safety. Speaking of the duty to exercise ordinary care, we said in St. Mary's Hospital v. Scanlon, 8 Cir., 71 F.2d 739, 743:

"This duty is limited by the rule that no one is required to guard against or take measures to avert that which a reasonably prudent person under the circumstances would not anticipate as likely to happen."

Ordinary care has reference to probabilities of danger rather than possibilities of peril. Here plaintiff had such notice and warning as to charge him as a matter of law with knowledge of the dangerous condition of this car door. Having been warned as to the condition of the door, the danger could not be said to be a hidden one known only to the defendant, and the duty of making premises safe by warning to invitees applies only to defects which are hidden. Grand-Morgan Theater Co. v. Kearney, 8 Cir., 40 F.2d 235.

There being no substantial proof of any negligence on behalf of defendant which was the proximate cause of plaintiff's injuries, we conclude that the court committed no error in directing a verdict in defendant's favor, and the judgment appealed from is therefore affirmed.